[Civ. No. 21684.   Second Dist., Div. One.   Dec. 27, 1956.]

HARRY S. GORDON et al., Respondents, v. ALLEN
SCHWARTZ, Appellant.

Harry A. Franklin for Appellant.

Joseph Stell and Herbert Murez for Respondents.

FOURT, J.—This is an appeal by the defendant from a decree enjoining defendant from, among other things, soliciting or accepting certain business of persons who were customers of the plaintiffs during the period of the employment of defendant by plaintiffs, and awarding plaintiffs $500 damages.

A résumé of the facts established, and some of the reason-

able inferences to be drawn therefrom, is as follows: The plaintiffs are, and for about eight and one-half years had been, engaged in the house-to-house installment sales business. Their business is carried on by selling merchandise, generally to a housewife in the low income bracket, at her house, with either a down payment of a dollar or two, or with no down payment. Weekly installments of one or two dollars each are thereafter collected by the plaintiffs through their collector-salesmen. The collector-salesman has a dual task: he calls at the house of the customer each week on a scheduled day and collects the small installment payment; at the same time he makes what in the trade are called "add-on sales," which are sales of additional merchandise the cost of which is added to the customer's account. The customer comes to rely on the plaintiffs, through the media of their collector-salesmen, as her supplier of the type of goods which plaintiffs handle.

Plaintiffs carry a line of general merchandise, clothing, household goods and appliances. Their customers are unique in that they are, very largely, persons in the low income brackets and many of them cannot afford to patronize more than one house-to-house credit-installment supplier. To such persons, the plaintiffs' services and credit policy are of special appeal.

Plaintiffs have about 9,000 accounts in Los Angeles County. Their customers were obtained, ordinarily, by (1) references from old customers; (2) employees of plaintiffs canvassing the various homes for the sole purpose of attempting to make an initial sale and (3) plaintiffs purchasing accounts from companies whose business it was to canvass and make the opening sale on an installment basis. Many of the persons who opened such accounts would make a single purchase and thereafter pay off the account, but some would continue to buy and these formed the hard core of regular, steady customers who bought merchandise from the plaintiffs for many years. There was considerable turnover in the new accounts but plaintiffs' regular customers could be counted on to buy month after month and year after year.

The plaintiffs' cost of merchandise plus costs of sales and collections was about 70 per cent of the gross sales price. After computing overhead, plaintiffs made a net profit of approximately 10 per cent. These percentages continued fairly constant and a few hundred customers one way or the other did not raise or lower the overhead materially.

Defendant was employed by the plaintiffs as a collector-salesman in March, 1954, and shortly thereafter he was as-

signed to a route. For each day of the week he was given a set of about 100 cards and on each card was the name of a customer of plaintiffs on the particular route, her address, a list of the merchandise previously bought by her from the plaintiffs, and the dates and amounts of payments for the period during which she had been a customer of the plaintiffs; also, the money balance due on the account and the name of the person who referred or obtained the customer in the first instance. The weekly route of about 500 customers assigned to the defendant was located in the district known as East Los Angeles. The defendant serviced this regular route of plaintiffs' customers for six months, seeing each customer on the same day of each week during that time. When the card indicated that the balance of the account and the credit rating of the customer warranted it, the defendant would attempt to sell additional merchandise to the customer. The customers were induced to and did rely upon defendant being at their house one week from the day of his last call.

About September 4, 1954, defendant left plaintiffs' employ. He immediately started operating the same type of business for himself, selling the same kind of merchandise. He went back along his old route and methodically visited the customers of plaintiffs whose names, identities and location he had learned, and whose personal acquaintance he had made, during and by reason of his former employment with the plaintiffs. He visited these customers without any prior invitation or request on their part to do so, with the exception of a very few instances, and he solicited business from them and advised them that he was now engaged in the same business for himself. With the knowledge which he had acquired from the plaintiffs' customer cards he asked, suggested and urged the customer to buy merchandise from him upon the same installment basis. If he did not succeed in selling the customer the first time, he would call back regularly. After he made a sale he would call on the customer regularly each week, collecting the weekly installment and making substantial add-on sales, which were greatly facilitated by his having sold them merchandise during his employment with the plaintiffs.

Defendant solicited business from most of the customers on whom he called while in the plaintiffs' employ and he succeeded in diverting to himself in many cases all, and in some cases a portion, of the business of about 100 customers. He admitted selling a total of $2,676.45 in merchandise to 54 of plaintiffs' customers.

The plaintiffs, upon learning of defendant's activities, instituted this action and on December 2, 1954, a preliminary injunction was issued. Thereafter, defendant continued to make sales in spite of the injunction. After a full and complete hearing was had, the trial court granted a permanent injunction and awarded the plaintiffs $500 damages, from which judgment the defendant prosecutes this appeal upon a settled statement.

The defendant contends that the evidence is insufficient to sustain the judgment for $500 damages. The defendant admitted to sales of merchandise in a total sum of $2,676.45 to but 54 of the plaintiffs' customers. There would be nothing unreasonable under the facts of this case to conclude that the sales to the 54 customers were representative of the sales made by the defendant to all of the approximately 100 customers of the plaintiffs. The trial court could well have concluded from the evidence that the defendant sold $5,000 worth of merchandise of a kind usually sold by the plaintiffs to those of plaintiffs' customers whom defendant learned of by reason of his employment by the plaintiffs. There was testimony that the net profit is always about 10 per cent of the gross sales. Furthermore, the plaintiffs would not necessarily be limited to such an amount as damages. They were entitled to recover for all damages proximately caused by the defendant's wrong. (Civ. Code, § 3333.)

Defendant asserts that there was no confidential information not readily accessible to his competitors and further contends that he did not injure the plaintiffs. A reading of the facts of this case completely answers any such contention.

In the case of *George* v. *Burdusis* (1942), 21 Cal.2d 153, at pages 159-161 [130 P.2d 399], the court stated: "It is well settled in California that after an employee who worked on a retail delivery route has left the service of his employer, his use of the customer list to solicit business for another person is an unwarranted disclosure of trade secrets. Under such circumstances, a court of equity will enjoin not only the solicitation of the customers of the first employer but also the acceptance of any orders from them. (Citing cases.) However, where the customers are wholesale buyers whose names appear in directories, and they are so few in number that anyone might readily discover them, it has been held that the employer's list is not secret and confidential information. (*Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485] . . . .)

"The rule of *Avocado Sales Co.* v. *Wyse, supra,* has however, been expressly limited by subsequent decisions of this court. It 'is not merely the knowledge of the identity of the customers, *but the friendly contact with them which is important to the solicitors. . . .' Their personal acquaintance with customers and knowledge of 'their respective places of residence, their peculiar likes and fancies and other characteristics, a knowledge of which would greatly aid them in securing and retaining the business of said former customers,' is sufficient to invoke equitable protection against the subsequent use by a former employee of such information. (Dairy Dale Co.* v. *Azevedo,* 211 Cal. 344 [295 P. 10].)

"And the list of customers, not ordinarily entitled to judicial protection, may become a trade secret, if there is confidential information concerning the value of these customers. . . .

"As a customer list within the rules expressed may exist in the memory of the employee as well as in writing (*Avocado Sales Co.* v. *Wyes, supra*), the finding that no route book ever existed for the customers of the appellants served by Tom Burdusis is not determinative of the appellants' rights. Tom Burdusis testified that he carried in his mind his list of customers, and they are as easily identified as those in the cases of *Avocado Sales Co.* v. *Wyse, supra,* and *Gloria Ice Cream etc. Co.* v. *Cowan, supra* [2 Cal.2d 460 (41 P.2d 340)]." (Emphasis added.)

*Aetna Bldg. Maintenance Co.* v. *West,* 39 Cal.2d 198 [246 P.2d 11], decided in July, 1952, was a case wherein a former employee with an intimate knowledge of his former employer's customers, business operations and trade secrets, went out to compete with his former employer. The court said (pages 203-205) : ". . . The question, therefore, is whether West was guilty of unfair competition in soliciting Aetna's customers.

. . . . . . . . . . . . .

" 'Solicit' is defined as: 'To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite.' (Black's Law Dictionary, 3d ed., p. 1639.) 'It implies *personal* petition and importunity addressed to a particular individual to do some particular thing, . . .' (*Golden & Co.* v. *Justice's Court,* 23 Cal.App. 778, 798 [140 P. 49].) It means: 'To appeal to (for something) ; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make

petition to; to plead for; to try to obtain.' (*People* v. *Phillips*, 70 Cal.App.2d 449, 453 [160 P.2d 872].)

. . . . . . . . . . . .

"However, even in the absence of solicitation, Aetna is entitled to protection against West's use, or disclosure in competition with it, of trade secrets given to him only for the purpose of carrying on his employer's business. (*Reiss* v. *Sanford*, 47 Cal.App.2d 244, 246-247 [117 P.2d 694]; *Germo Mfg. Co.* v. *McClellan*, 107 Cal.App. 532, 541 [290 P. 534]; Lab. Code, § 2860; Rest., Agency, § 396(b); see cases collected in 165 A.L.R. 1453.)

. . . . . . . . . . . .

". . . Under such circumstances, as stated in *George* v. *Burdusis*, 21 Cal.2d 153, 159 [130 P.2d 399], and other decisions, to obtain relief against a former employee it must be shown: (1) The information was confidential and not readily accessible to competitors; (2) The former employee solicited the customers of his former employer with intent to injure him; (3) The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; (4) The business is such that a customer will ordinarily patronize only one concern; (5) The established business relationship between the customer and the former employer would normally continued unless interfered with. (*California Intelligence Bureau* v. *Cunningham*, 83 Cal.App.2d 197, 202 [188 P.2d 303], and cases there cited.)

. . . . . . . . . . . .

"Equitable protection may be invoked against the subsequent use by a former employee of knowledge of the 'peculiar likes and fancies and other characteristics' of the former employer's customers where such knowledge will aid him in securing and retaining their business. (Citing cases.) This rules applies where friendly contact with customers is important to solicitors, a circumstance typical of the so-called 'trade route' cases. It has also been applied to situations involving a knowledge of the customer's desire for specialized information, his preference for certain products, and his buying habits. (*California Intelligence Bureau* v. *Cunningham*, *supra*, p. 204; *Wallich* v. *Koren*, 80 Cal.App.2d 223, 227 [181 P.2d 682].)"

Whether the Aetna case sets down the rule that it is necessary to show all of the five items recited above (paragraph [8] of the Aetna decision) before relief against a for-

mer employee may be had, or whether it was intended otherwise, as is suggested in a law review article in 41 California Law Review 38 (1953), does not concern us for the reason that we are of the opinion that in the instant case all of the factors, in any event, were present.

The remaining contentions of the defendant are, in our opinion, without merit.

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 21, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1957.