No. 13796

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE J. T. MILLER COMPANY, a partnership
and UPPER NORTHWEST PAYMENT PLANS COMPANY,
a Minnesota corporation,

Plaintiffs and Appellants,

-vs-

JAMES R. MADEL,

Defendant and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial
District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Crowley, Haughey, Hanson, Gallagher and Toole,
Billings, Montana
H. Elwood English argued, Billings, Montana
Daniel R. Shulman argued, Minnesota

For Respondent:

Berger, Anderson, Sinclair, Murphy, Nelson &
Edwards, Billings, Montana
A Clifford Edwards argued, Billings, Montana

---

Submitted:  January 23, 1978

Decided: MAR - 1 1978

Filed: MAR - 1 1978

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the findings, conclusions and order for judgment entered by the District Court, Yellowstone County. The court ruled the restrictive covenant contained in the employment agreement between the parties was ineffective in the state of Montana because it was violative of the public policy of this state and therefore unenforceable.

The material facts were stipulated to for the purpose of appeal. Plaintiffs J. T. Miller Co. and Upper Northwest Payment Plans Co. are engaged in the business of operating and managing a general insurance agency in Minneapolis, Minnesota. Defendant entered into an employment agreement with plaintiffs on July 6, 1971. Defendant was employed to act as Miller Company's field agent for the purpose of selling "credit life" insurance. Pursuant to this agreement, defendant did act as a salesman for plaintiff Miller Co. in the Minnesota area until 1973. In 1973, defendant was transferred to North Dakota. After one year in North Dakota, defendant was moved to Montana as of August 1974. During the following August (1975), defendant terminated employment with plaintiffs. Defendant immediately commenced employment with a competing insurance company.

Plaintiffs filed suit on March 10, 1976, praying for an order restraining defendant from contacting or soliciting any of plaintiffs' customers with whom defendant had at any time dealt with on behalf of plaintiffs. The District Court issued, upon plaintiffs' ex parte application and affidavit, a temporary restraining order. Trial was held on this matter October 5, 1976. Following trial, the District Court dissolved the temporary

restraining order on the grounds the restrictive agreement was contrary to the declared public policy of Montana and section 13-807, R.C.M. 1947. From this judgment, plaintiffs appeal.

The dispute centers on the legal question: Is the restrictive covenant contained in the employment agreement between plaintiffs and defendant enforceable under the laws of Montana?

The pertinent part of the restrictive covenant contained in the employment agreement reads:

"* * * The Employee agrees and covenants that for a period of five (5) years after the termination of this Agreement, he will not directly or indirectly own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any business which sells credit life, credit accident, health or other insurance to any customer of the Employer with whom the Employee has at any time had any dealings on behalf of the Employer; contact or solicit any customers of the Employer with whom the Employee has at any time had any dealings on behalf of the Employer; or sell or deliver to any customers of the Employer any insurance sold by the Employee while an Employee of the Employer as set out in this contract."

Plaintiffs challenge the applicability of section 13-807, R.C.M. 1947, to the restrictive covenant contained in the employment agreement. Section 13-807 states:

"Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by the next two sections, is to that extent void."

Section 13-807 was first enacted in Montana as Sec. 2246, 1895 Civil Code and was adopted from the California Civil Code, Business and Professions §16600. Prior thereto, the California Supreme Court construed its effect as voiding restraints other than those authorized by companion sections. Vulcan Powder Co. v. Hercules Powder Co., (1892), 96 Cal. 510, 31 P. 581. Also see:

Monogram Industries, Inc. v. Sar Industries, (1976), 134 Cal. Rptr. 714, 718, 64 C.A.3d 692. Thus we apply the presumption of statutory construction where in borrowing a statute from a sister state the legislature borrows the construction placed upon it by the highest court of the state from which it is borrowed. State ex rel. Mankin v. Wilson, (1977), ____Mont.____, 569 P.2d 922, 34 St.Rep. 1075, 1078. This Court requires strict compliance with the statutory provisions of section 13-807 and companion sections 13-808 and 13-809, R.C.M. 1947. Bauer v. Chaussee, (1977), ____Mont.____, 567 P.2d 448, 34 St.Rep. 778, 780.

In their challenge plaintiffs contend the prohibition of section 13-807 is not absolute, but permits restraints which are reasonable under the circumstances. We find this contention fails for two reasons:

First Section 13-807 is clear in its prohibition against restraint of a lawful profession, trade or business, except where the restrictive covenant involves the sale of the goodwill of the business (section 13-808), or a partnership dissolution agreement (section 13-809). Montana follows those jurisdictions making a distinction between covenants incident to an employment contract and those ancillary to a sale or other transfer of a business, practice or property. Where distinctions have been made, courts are less prone to enforce restrictive covenants between employer and employee than where the restriction is part of a contract for sale of a business in which goodwill may be a part of the property sold. H & R Block, Inc. v. Lovelace, (1972), 208 Kan. 538, 493 P.2d 205, 50 ALR3d 730; Monogram Industries, Inc. v. Sar Industries, supra.

- 4 -

Plaintiffs' restrictive covenant, in their employment agreement, clearly does not qualify under either statutory exception to section 13-807. Accordingly, the directness of section 13-807 in its structure and the broadness of its terms commands the conclusion that it applies to the facts of this case and prohibits the restraint asserted.

Second Plaintiffs' contention also fails for the reason once section 13-807 is found to be the applicable law it is plaintiffs' burden to show that the restrictive covenant did not violate this section. To meet this burden plaintiffs relied on numerous California cases and one Montana case -- Best Dairy Farms v. Houchen, (1968), 152 Mont. 194, 448 P.2d 158.

We focus our attention on the Montana case as the California cases relied on by plaintiffs were previously reviewed by this Court in Houchen, the Montana case.

Plaintiffs contend this Court gave no indication whatsoever in Houchen that section 13-807 would bar an injunction under the proper circumstances, and / proper case for injunctive relief is presented by the factual setting of the case at hand. We find no merit in that speculation. In Houchen, the issue raised was whether the customer information, contained in the memory of the employee, was a property right or trade secret of the employer, such as to allow injunctive relief against the ex-employee's later solicitation of his former employer's customers, the Court stated:

> "However, even in California where the court has gone as far as it did in Gloria Ice Cream, supra, in Gordon v. Schwartz, 147 Cal.App.2d 213, 305 P.2d 117, 121 (1957), the California Court listed as one criterion in 'trade route' cases that the information was confidential and not readily accessible to competitors.
>
> "* * *

> "Also in Restatement of Agency 2d, § 396, the Comment on Clause (b) indicates that there is no 'trade secret' if the information was not confidential and was readily accessible to others." (Emphasis added.) 152 Mont. 199.

Houchen was not enjoined from soliciting customers of his former employer. The information of customer's names and addresses was not confidential and was readily accessible to anyone.

In the instant case, defendant did nothing more than to contact banks which were obviously known and open to all vendors of credit life insurance. No privileged information was required by defendant to locate the banks which he solicited. The knowledge of the banks was clearly within the public domain. In fact, to locate banks in Montana would be a much easier task than to produce customer names on a milk route as in Houchen.

Finally, plaintiffs contend the key question in this case is whether the former employee acted unfairly and utilized his past employer's customer information. In answer, we note the agreed statement of facts found in Houchen:

> "* * * the corporation employed the driver as a route salesman, gave him a list of customers to sell to, paid him for new customers, paid him for his services, and that the driver upon termination of his employment with the corporation utilized the knowledge obtained while employed by the corporation to sell products of another dairy to corporation's customers."

Under this factual setting, no injunction against solicitation was granted.

Mathews Paint Co. v. Seaside Paint & Lacquer Co., (1957), 148 C.A.2d 168, 306 P.2d 113,117, adds additional clarity to the question of unfair utilization of a past employer's customer information. In Mathews, plaintiff sued to enjoin defendants,

- 6 -

former employees of plaintiff, from selling lacquer products to plaintiff's former customers. It was alleged that defendants, while in the employ of plaintiff, learned the names and addresses of the customers for plaintiff's products and the individual requirements and needs of the customers, and defendants were making use of this information to sell other lacquer products in competition with plaintiff. The court found the complaint insufficent to state a cause of action for the reason that it failed to allege the use by defendants of secret and confidential information pertaining to plaintiff's business.

In the instant case, defendant, a salesman, left the employment of plaintiffs, possessed of information gained in that employment. The employee, having left his employment, is free to make use of his experience, as long as he does not violate his employer's confidence. King v. Pacific Vitamin Corporation, (1967), 64 Cal.Rptr. 486, 489, 256 C.A.2d 841; Anno. 28 ALR3d 29; 42 Am Jur 2d, Injunctions, §112, pp. 860,861. Here, defendant did nothing more than to contact banks which were known and open to all. No privileged information was required by defendant to locate the banks he solicited. Under the standards set forth in Houchen and Mathews, the information was not confidential. Defendant is accused of nothing, except selling to former customers of plaintiffs in a field  that is known and open to all competitors of plaintiffs.

The judgment of the District Court is affirmed.

Justice.

- 7 -

We Concur:

_____
Acting Chief Justice

_____

_____
Justices.

_____
Hon. Robert Boyd, District
Judge, sitting.

Mr. Justice Daniel J. Shea concurring:

I concur with the opinion herein, but I feel the general matter of credit life insurance, as it was explained to this Court during oral argument, should be put in perspective from the standpoint of the consumer. It is clear the present statutes and practices of the banks and credit life insurance companies have anything but the interests of the consuming public in mind.

It appears that section 40-4214 (1959), R.C.M. 1947, of Montana's insurance codes authorizes credit life insurance "as additional security for any indebtedness." The statute provides in full:

> "Existing insurance—choice of insurer. When credit life insurance or credit disability insurance is required as additional security for any indebtedness, the debtor shall, upon request to the creditor, have the option of furnishing the required amount of insurance through existing policies of insurance owned or controlled by him or of procuring and furnishing the required coverage through any insurer authorized to transact an insurance business within this state." (Emphasis added.)

By this statute the borrower is allowed the option of further securing the bank by naming the bank as a beneficiary on existing life insurance policies on the borrower's life, or of going to an insurance company of the borrower's choice to procure the required insurance. Unfortunately, no duty is placed upon the bank to inform the borrower of these rights. It is highly unlikely that the average borrower would know of the existence of this statute so that he could make his wishes known to the bank. It is equally obvious that the banks are not going to take it upon themselves to inform the borrower of the existence of this statute and of his rights under the statute. Accordingly, the statute is—from the standpoint of effectively conferring rights upon the consuming public—meaningless.

I believe that because of the weakness of this statute, the situation developed in this case. From the life insurance company's standpoint, credit life insurance was a highly lucrative business. It was in its interest to corner the market, more or less to have an exclusive franchise from the banks to provide the credit life insurance required by the bank of its borrowers. Accordingly, the insurance company spent large sums of money wining and dining appropriate bank personnel to become the exclusive agent selling credit life insurance. If the insurance company won the bank's favor, they had in effect a monopoly on the credit life insurance policies of the bank. The essence of the insurance company's claim here is that it is fighting to retain exclusive control of its territory.

There is also an inherent danger that the bank choosing the life insurance company will, in exchange for this business, be getting favors from the insurance company. They could, of course, take any form. At the least, the lavishing of large sums of money wining and dining the appropriate bank personnel involved, can only have the effect of increasing the ultimate cost to the consumer. Moreover, there is another angle that the bank, through its board of directors or officers, could form an insurance company or acquire an interest in an insurance company handling credit life insurance for the bank. In this fashion, the insurance company would have a built-in clientele, and the bank officers, etc., would have a built-in source of additional income—that produced from also having an interest in the insurance company. It should be noted that this kind of cozy relationship is specifically prohibited to banks chartered under the National Banking Act. In such situations banks may not engage in the insurance business or act as agents. 12 U.S.C. Section 92.

It is unfortunate that the burden is placed on the borrower in a situation where he is obviously in no position to either know the law or to bargain with the banks and insurance companies who have already decided how the spoils are to be divided.

Daniel J. O'Hea
Justice