[No. A029164. First Dist., Div. Five. Mar. 26, 1986.]

MOSS, ADAMS & COMPANY, Plaintiff and Appellant, v.
JOHN D. SHILLING et al., Defendants and Respondents.

**COUNSEL**

Jeffrey J. Parish, Glenn E. Westreich, Wayne L. Bender and Rosenblum, Parish & Bacigalupi for Plaintiff and Appellant.

James H. A. Pooley, Hans R. Troesch, Mosher, Pooley & Sullivan and Mosher, Pooley, Sullivan & Hultquist for Defendants and Respondents.

**OPINION**

**KING, J.—** In this case we hold that professional employees of an accounting firm, as a matter of law, did not engage in unfair competition when they used a company rolodex to obtain the addresses of clients of the firm for whom they had provided professional services, in order to mail those clients an announcement of their formation of a new accounting partnership. The mailing of such an announcement does not constitute solicitation and therefore is not unfair competition.

On appeal from a final judgment Moss, Adams & Company (hereafter Moss Adams) challenges a summary adjudication order in favor of John D. Shilling, Cynthia L. Kenyon, and Shilling, Kenyon & Company (hereafter Shilling and Kenyon). We affirm the judgment.

Shilling and Kenyon were managerial employees of Moss Adams, an accounting firm with offices in four western states. Both signed employment agreements stating that the names and addresses of Moss Adams' clients were trade secrets and could not be used to solicit those clients during employment or within one year thereafter.[1]

---

[1] Shilling's employment agreement provided in pertinent part that (1) the names and addresses of Moss Adams' clients "are 'trade secrets' and proprietary to Moss-Adams, and are not to be disclosed or to be used by Employee either during the term of this Agreement or at any time thereafter," and (2) for a period of one year following termination of employment the employee could not use or make known to any other person the names or addresses of clients or "[c]all on, solicit, divert, take away or attempt to call on, solicit, divert or take away any of the clients of Moss Adams . . . ." Kenyon's employment agreement contained similar provisions.

In 1982, Shilling and Kenyon decided to form their own accounting firm. Two weeks before they submitted resignation letters to Moss Adams, Kenyon removed a rolodex from the desk of a Moss Adams' receptionist and took it home. There she and Shilling used the rolodex, as well as Kenyon's personal collection of business cards, to address envelopes to Moss Adams' clients with whom they had had personal contact and to whom they had charged time during the previous year. In these envelopes they mailed the following announcement: "John D. Shilling and Cynthia L. Kenyon, formerly with Moss Adams, are pleased to announce the formation of a new partnership: Shilling, Kenyon & Co.[,] Certified Public Accountants[,] Lloyds Bank Building[,] One Almaden Blvd., Suite 1110[,] San Jose, CA 95113[,] (408) 295-3822[.]"

Moss Adams sued Shilling and Kenyon for misappropriation of trade secrets, interference with prospective economic advantage, interference with contractual relations, breach of contract, breach of fiduciary duty, and unfair competition. Shilling and Kenyon cross-complained for declaratory relief and unfair competition.

The court granted a motion by Shilling and Kenyon for summary adjudication (Code Civ. Proc., § 437c) and rendered an order determining (1) the mailing of the announcements and use of the rolodex did not constitute solicitation and was not unlawful, and (2) the employment agreements could not be enforced to prohibit such conduct. The court expressly withheld determination whether the information from the rolodex was a trade secret, stating in open court that while this was a question of fact, it need not be decided because there was no solicitation.

The case proceeded to a nonjury trial on the issues other than the mailing of the announcements and this resulted in a judgment for Shilling and Kenyon. Only the grant of summary adjudication is challenged on appeal.

In granting summary adjudication for Shilling and Kenyon, the court relied on the rule that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation." (*Aetna Bldg. Maintenance Co.* v. *West* (1952) 39 Cal.2d 198, 204 [246 P.2d 11]; accord; *Continental Car-Na-Var Corp.* v. *Moseley* (1944) 24 Cal.2d 104, 113 [148 P.2d 9].) In both decisions, our Supreme Court also held that information used in those cases to announce a change of employment did not constitute trade secrets. (*Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d at pp. 204-205; *Continental Car-Na Var Corp.* v. *Moseley, supra,* 24 Cal.2d at pp. 111-112.) Moss Adams contends the use of a trade secret to announce a change of employment (rather than to solicit) is still unfair competition, and there was a triable fact issue whether the information in

its rolodex was a trade secret, thus the court erred in granting summary adjudication.

The issue whether a former employee can use trade secrets to announce a change of employment has not been squarely addressed in California. Previous decisions have discussed only the unlawful use of trade secrets to solicit (e.g., *Klamath-Orleans Lumber, Inc.* v. *Miller* (1978) 87 Cal.App.3d 458, 464-466 [151 Cal.Rptr. 118]), the permissible use of material that is not a trade secret to solicit (e.g., *Continental Car-Na-Var Corp.* v. *Moseley, supra,* 24 Cal.2d at pp. 108, 111), and the permissible use of material that is not a trade secret to announce a change of employment (e.g., *Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d at pp. 204-205). (See Comment, *Protection of Customer Lists in California* (1935) 23 Cal.L.Rev. 399, 406-407.)

An answer, however, is suggested in *Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d at page 204, in which the court said that *"even in the absence of solicitation,* Aetna is entitled to protection against West's use, or disclosure in competition with it, of trade secrets given to him only for the purpose of carrying on his employer's business." (Italics added.) This implies that solicitation is not the only possible misuse of a customer list, and that other uses of secret customer lists may constitute unfair competition.

Accordingly, in the present case the trial court's determination that there was no solicitation did not end the unfair competition inquiry; it was also necessary to determine whether Shilling and Kenyon made some other unlawful use of a trade secret to facilitate announcing their changes of employment.

■ Ordinarily whether information is a trade secret constitutes a question of fact; however, this is not so under the peculiar facts presented here. It is undisputed that Shilling and Kenyon simply used the rolodex to obtain some of the addresses of clients *whose names they already knew* from having personally provided accounting services during the previous year. Thus, two sub-issues are presented: (1) whether these clients' names were trade secrets even though they were already known to Shilling and Kenyon, and (2) whether the clients' addresses were trade secrets.

■ On the first sub-issue, under established case law the clients' names were not trade secrets. One may do business with a former employer's customers with whom one became personally acquainted and developed a business relationship while formerly employed. (*Avocado Sales Co.* v. *Wyse*

(1932) 122 Cal.App. 627, 634 [10 P.2d 485]; *Theodore* v. *Williams* (1919) 44 Cal.App. 34, 37-39 [185 P. 1014].)

Thus, in *Avocado Sales Co.* it was lawful for a salesman to sell avocados to retail customers whom the salesman had serviced for a former employer, "thereby making personal friends and acquiring a personal knowledge of his customers . . . ." (122 Cal.App. at p. 634.) The court quoted a New York decision for the proposition that "Equity has no power to compel a man who changes employers to wipe clean the slate of his memory." (*Ibid.*, quoting *Peerless Pattern Co.* v. *Pictorial Review Co.* (1911) 147 App.Div. 715, 717 [132 N.Y.S. 37, 39].) Similarly, in *Theodore* it was lawful for a laundry route driver to announce his new employer by driving along his old route in a truck marked with his name and the name of the new employer; the driver merely used his personal knowledge of the route and its customers to make the announcement. (*Theodore* v. *Williams, supra,* 44 Cal.App.3d at pp. 37-39.)[2]

Under the rule of *Avocado Sales Co.* and *Theodore,* the names of Moss Adams' clients serviced by Shilling and Kenyon during the year preceding their resignations were not trade secrets, because the clients became known through personal contact and provision of accounting services. Shilling and Kenyon could not be compelled to "wipe clean the slate of their memories." The names of other Moss Adams' clients may have remained trade secrets, but Shilling and Kenyon did not record the names or addresses of those clients or mail announcements to them.

■ On the second sub-issue, whether the clients' addresses were trade secrets even though their names were not, the answer must be no. All of the clients were local, and their addresses were easily obtainable through normal resources (e.g., telephone directories).

The record is unclear as to precisely how many addresses were recorded from the rolodex. The rolodex contained almost 600 client names. In a declaration the managing partner of Moss Adams' San Jose office stated the firm contacted approximately 40 clients who received the announcement from Shilling and Kenyon. Shilling and Kenyon submitted declarations by 29 clients who switched firms, and Kenyon said in a subsequent declaration that these were "most" of the clients who switched. Shilling was quoted in

---

[2]In contrast, the use by memory of an extensive customer list to permit selective solicitation was held to be unfair competition in *Klamath-Orleans Lumber, Inc.* v. *Miller* (1978) 87 Cal.App.3d 458, 462-66 [151 Cal.Rptr. 118]. There, unlike in *Avocado Sales Co.* and *Theodore,* the former employees had not personally dealt with the customers; one was a former office manager and the other was a former shop manager who had coordinated production. (*Id.,* at pp. 461-462.)

a local newspaper article as stating about 35 percent of the clients they supervised for Moss Adams switched to the new firm. Thus, the record suggests no more than 100 or so announcements were sent to Moss Adams' clients, with an unknown number of the addresses obtained from Kenyon's personal collection of business cards rather than from the rolodex. At most, the use of the rolodex merely saved Shilling and Kenyon from the minor inconvenience of obtaining the desired addresses through generally available resources.

■■■ In short, we conclude that (1) former employees cannot use trade secrets to announce a change of employment to the former employer's customers, (2) the names of clients to whom Shilling and Kenyon mailed announcements were known to them from personally providing accounting services and therefore were not trade secrets, and (3) these clients' addresses could have been easily determined without use of the rolodex and thus were also not trade secrets. ■ As a matter of law the use of the rolodex did not violate the common law of unfair competition.

■ Moreover, because there was no use of trade secrets, the use of the rolodex was not actionable under the employment agreements. Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets. (Bus. & Prof. Code, § 16600; *Gordon Termite Control* v. *Terrones* (1978) 84 Cal.App.3d 176, 178 [148 Cal.Rptr. 310].) Stated another way, "the applicable California law is that 'the employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract.'" (*Hollingsworth Solderless Terminal Co.* v. *Turley* (9th Cir. 1980) 622 F.2d 1324, 1338, quoting Hays, *The California Law of Unfair Competition Takes a Turn—Against the Employer* (1953) 41 Cal.L.Rev. 38, 69.)

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied April 17, 1986, and appellant's petition for review by the Supreme Court was denied July 9, 1986.