[No. B022357. Second Dist., Div. Five. Sept. 16, 1987.]

JOHN F. MATULL & ASSOCIATES, INC., Plaintiff and Respondent, v.
CAROL J. CLOUTIER, Defendant and Appellant.

COUNSEL

Antin, Stern, Litz & Grebow, Arthur Grebow, Edward Gartenberg and Joseph L. Gattuso for Defendant and Appellant.

Michael G. Portner for Plaintiff and Respondent.

OPINION

FEINERMAN, P. J.—This is an appeal from the trial court's granting of a preliminary injunction.[1] Appellant contends that the terms of the court's injunction were overly vague, impermissibly intruded upon her practice of law and were based on an unenforceable covenant not to compete.

### BACKGROUND

Appellant, Carol J. Cloutier (Cloutier), is an attorney who practices labor law. Respondent is engaged in the business of labor relations consulting and was incorporated for that purpose in 1984. Cloutier joined that corporation as an officer and one-third shareholder. Prior to this time, Cloutier had performed labor relations consulting work through the firm of Gund and Gund, Inc. (Gund) and served a number of clients on behalf of Gund.

After respondent John F. Matull & Associates (Matull & Assoc.) incorporated, Gund sold respondent all of its accounts and retained respondent

---

[1] Appellant also argues that the trial court erred in granting respondent a temporary restraining order. Since the preliminary injunction superseded the terms of the temporary restraining order, we need not address the question of whether the court abused its discretion in granting the temporary restraining order.

as an independent consultant to service its existing and new accounts. The purchase and consulting agreement which Gund (Seller) entered into with respondent Matull & Assoc. (Buyer) contained a buyer's covenant, whose terms read as follows: "Buyer and its officers, directors and shareholders, jointly and severally, hereby agree that for a period of FIVE (5) years from the Closing: [¶] (a) They will not directly or indirectly provide Services to any Existing Account or New Account except under the terms of this agreement. [¶] (b) They will not directly or indirectly, for themselves or any other person, firm or corporation, divert, take away, solicit or attempt to divert, take away or solicit, any Existing Account or New Account from Seller or Buyer. [¶] (c) The covenants agreed to herein shall apply to all officers, directors and shareholders signatory hereto even though they may no longer be such officers, directors or shareholders." The contract further specified that the remedy for breach of this covenant would be "temporary and permanent injunctive relief without the necessity of proving actual damages."

Two sets of signatures were affixed at the conclusion of the contract. Respondent and Edward Gund first signed as parties to the agreement. They and four other persons, including Cloutier, then signed their names immediately under a sentence which read as follows: "By their signatures . . . the following individuals, as an inducement for Seller and Buyer to enter into this Agreement, agree to be bound by the provisions of Article XI (Covenant Not to Compete) of this Agreement." The contract was signed by everyone in July 1984.

By April 1986, relations between Cloutier and respondent had soured and Cloutier left respondent's employ.[2] ██ ██ ██ ██ A month later, respondent filed a complaint for damages for "breach of covenant not to compete and for breach of fiduciary duty and injunction."[3] Respondent also

---

[2] According to Cloutier, relations with respondent, John Matull (Matull), became strained towards the fall of 1985, when Matull allegedly began violating her rights as a corporate officer and shareholder. In her opposition to issuance of the preliminary injunction, Cloutier declared that Matull had refused to pay dividends or provide copies of financial reports, had cut officers' salaries, except his own, and had had his corporation execute an unsecured promissory note in his favor showing a payment to the corporation, but which was not ratified by the board of directors.

[3] Respondent argues that appellant has a continuing fiduciary duty to the corporation as an officer and director because she never formally resigned from these corporate positions. Of course, a director or an officer of a corporation acts in a fiduciary capacity and the law does not allow such individuals to secure any personal advantage as against the corporation. (*Signal Hill Aviation Co.* v. *Stroppe* (1979) 96 Cal.App.3d 627, 639 [158 Cal.Rptr. 178]; *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 233 [28 Cal.Rptr. 865, 379 P.2d 321].)

In her declaration in opposition to issuance of the preliminary injunction, appellant states that she removed all of her possessions from the corporate offices on April 20, 1986, and "ceased [her] association with the corporation." She also states that she "ceased [her] duties

filed an ex parte application for a temporary restraining order. The court issued the temporary restraining order and an order to show cause re preliminary injunction.

In July 1986, a hearing was held on the order to show cause and the trial court granted a preliminary injunction. The preliminary injunction prohibited Cloutier from directly or indirectly "dealing" with respondent's customers in "any capacity related to [respondent's] business, namely industrial and labor relations, or matters which were commenced by [Gund]." It also enjoined Cloutier from using respondent's customer list in any fashion and from competing with respondent or "distributing any information from files and/or documents" related to respondent's customers "unless it is of a legal nature unrelated to the business conducted by [respondent] and which relates to a legal matter not of a labor relations aspect . . . ." The court further ordered that Cloutier return all files and documents of respondent, "including, but not limited to a rollodex containing [customer] names and phone numbers . . . taken from [respondent's] offices on or about April 20, 1986, and all files and documents related to the [listed] accounts." The injunction also specified those customers of respondent to which its terms referred.

---

as director and employee of the corporation" and that Matull and the other officers of the corporation were aware of her departure as of April 20.

As a general rule, the effectiveness of a resignation which is not tendered in writing, when in dispute, is a matter for judicial determination. A review of the record, however, clearly indicates that both appellant and respondent believed appellant had ceased all connection with the corporation after April 1986. First, Matull provided appellant with a copy of the minutes of a staff meeting held April 11, 1986. Those minutes state that appellant accepted Matull's offer of $5,000 for her stock and that appellant then asked Matull if he wanted her to leave the firm. According to the minutes, "Matull responded in the affirmative," and then appellant asked if she would be paid for April. Matull said, "yes" and appellant said "she would wind down her activities and turn everything over." This is in keeping with appellant's declaration that she ceased her duties as a director and employee of the corporation and left on April 20.

Second, in a letter dated May 11, 1986, from Matull to a client, Matull wrote that "the removal of [appellant] from our staff showed sound reasoning." The letter continued by saying that "Ed [Gund] stated to me that he agreed with my decision to remove [appellant]; that had he not merged with us when he did, he would have been forced to take the same action . . . ."

Finally, appellant's declaration indicates that when she left the corporation, respondent refused to forward her mail or phone calls. Obviously, Matull and appellant did not part amicably. Given the totality of these circumstances, one of two things very likely occurred: Either appellant tendered a de facto resignation as respondent's officer and director when she left respondent's employ in April 1986 or she was fired from those positions by Matull. In either event, we find no merit in respondent's claim that appellant served as a fiduciary and had fiduciary duties to the corporation after April 1986.

Discussion

I

Appellant contends that she was under no contractual duty to respondent as a result of respondent's purchase and consulting agreement with Gund. She insists that she only signed the contract as an inducement to Gund and that she did not intend to give respondent rights under the contract. Alternatively, appellant contends that the covenant itself is void as a matter of law. (Bus. & Prof. Code, § 16600.)

█ Despite appellant's declared intent, the terms of the covenant not to compete are clear and unambiguous. As part of that covenant, Buyer (the respondent) and its officers, directors and shareholders agreed that for a five-year period they would not directly or indirectly divert, take away, or solicit or attempt to divert, take away or solicit any existing or new account from Seller *or Buyer*. Appellant was an officer, director and shareholder of respondent and she specifically executed an agreement with Buyer and Seller to be bound by the promises of the covenant.

█ Appellant argues, however, that the covenant itself is unenforceable because it violates Business and Professions Code section 16600. That section reads that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Thus, if no exception exists to prevent application of this statute, the agreement is void. (See *Bosley Medical Group* v. *Abramson* (1984) 161 Cal.App.3d 284, 288 [207 Cal.Rptr. 477].)

Case law provides that the terms of Business and Professions Code section 16600 do not invalidate an "employee's agreement not to disclose his former employer's confidential customer lists or other trade secrets or not to solicit those customers." (*Loral Corp* . v. *Moyes* (1985) 174 Cal.App.3d 268, 276 [219 Cal.Rptr. 836].) Thus, while the statute invalidates agreements which penalize a former employee for obtaining employment with a competitor, it does not necessarily affect an agreement delimiting how that employee can compete. (*Ibid.*) Similarly, a former employee may engage in a competitive business for herself and compete with her former employer, provided such competition is fair and legal. (*Rigging, Internat. Maintenance Co.* v. *Gwin* (1982) 128 Cal.App.3d 594, 600 [180 Cal.Rptr. 451].) "A former employee's use of confidential information obtained from [her] former employer to compete with [her] old employer and to solicit the business

of [her] former employer's customers is regarded as unfair competition." (*Ibid.*)

It is exactly the use of such information and such solicitation which the respondent's covenant meant to preclude. We recognize that appellant had performed labor relations work for Gund's clientele before Gund contracted with respondent. Nevertheless, respondent had a right to protect against appellant trying to obtain the labor relations clients for herself through active solicitation should she grow dissatisfied with her association with respondent. We cannot say as a matter of law, therefore, that the antisolicitation covenant was invalid or unenforceable. (See *Golden State Linen Service, Inc.* v. *Vidalin* (1977) 69 Cal.App.3d 1, 9 [137 Cal.Rptr. 807].) As will be discussed below, however, this covenant not to compete cannot be applied to restrict appellant's right to provide legal services in the labor relations field which could not be performed by respondent without a license to practice law in California or to serve respondent's customers, should they seek her services.

## II

In her declaration in opposition to issuance of the preliminary injunction, appellant declared that in addition to practicing law, she did labor relations consulting work. This type of work, she stated, does not necessarily require a license to practice law. Indeed, Matull, who is not an attorney, incorporated for the purpose of providing labor relations consulting services. To the extent that appellant and respondent performed such consulting services, they could become each other's competitors. To the extent that appellant's labor relations work involved the provision of legal services which respondent could not engage in without a license to practice law in California, however, appellant and respondent, as lawyer and nonlawyer respectively, obviously could not compete. Respondent does not dispute appellant's declaration that she performed legal services for many of the same clients for whom she provided labor relations consulting services, including many of those numbered among the Gund accounts. Respondent's brief interprets the injunction to except from its coverage those labor relations activities of appellant "which are not of a labor relations aspect such as could be performed by Matull & Associates without a license to practice law." We disagree with respondent's construction of the existing order, but we concur in its evaluation of the permissible limits of restraint of appellant's law practice.

The first part of the preliminary injunction prohibits appellant from "dealing" with respondent's customers in any capacity related to industrial and labor relations or matters commenced by Gund, restrains her from using respondent's customer lists in any fashion and from distributing information from "files and/or documents" related to certain of respondent's customers unless "it is of a legal nature unrelated to the business conducted by [respondent] and which relates to a legal matter not of a labor relations aspect arising after June 13, 1986."

■ The language of the injunction is vague and ambiguous and overbroad in several respects. It would keep appellant from using respondent's customer lists, even for legitimate, noncompetitive purposes, including that of informing her legal clients about her change in employment or the fact she was no longer representing them. It is not solicitation to tell the clients of one's former employer about a change in jobs (see *Moss, Adams & Co.* v. *Shilling* (1986) 179 Cal.App.3d 124, 127 [224 Cal.Rptr. 456]) and an attorney clearly has an ethical duty to inform her clients that she is withdrawing her legal services. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 950 [203 Cal.Rptr. 879].)

We are also concerned with that portion of the preliminary injunction which orders appellant to return *all* of respondent's files and documents. These, of course, could include the files of appellant's legal clients who have sought her out and retained her services. The law is clear that "an attorney's work product belongs absolutely to the client." (*Kallen* v. *Delug, supra,* 157 Cal.App.3d at p. 950.)

■ We do not, however, question the sufficiency of the evidence to support a restraint on appellant's solicitation of traditional labor relations consulting business from respondent's customers. With respect to such solicitations, the injunction would be appropriate as to all activities of a labor relations consultant, except for those which can only be performed by an attorney licensed to practice law in California. For example, while appellant could be restrained from engaging in collective bargaining and labor contract administration, functions which nonlawyer labor relations consultants regularly perform, she could not be restrained from filing a complaint seeking a restraining order for a client in a labor dispute—a function which a nonlawyer labor relations consultant could not perform on behalf of a labor relations client.[4]

---

[4] For historic and psychological reasons, many employers prefer to utilize the services of a nonlawyer labor relations consultant in their collective bargaining activities. (See Aksen, *Arbitration and the Unauthorized Practice of Law* in The Wide World of Arbitration (Gold et

The judgment is reversed and the matter is remanded for reconsideration in accord with the views herein expressed. Each side to bear its own costs.

Ashby, J., and Hastings, J., concurred.