[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1427 
 OPINION
This is a wrongful termination case which presents a single issue concerning covenants not to compete. The case comes to us after the defendants'[1] motion for judgment on the pleadings was granted. Thus, on this appeal, we deem true all material facts which were properly pleaded and determine whether the complaint states a cause of action. (Mack v. State Bar ofCalifornia (2001) 92 Cal.App.4th 957 [112 Cal.Rptr.2d 341].) Applying those rules, we reverse.
The facts set forth in the complaint are simple: appellant Daniel Thompson worked for a company called Pac-West Labels. In September of 2000, Impaxx, Inc. bought Pac-West and asked appellant to sign a covenant which read "For a period of one (1) year following the termination of employment, I will not (1) call on, solicit, or take away any of Pac-West Label's customers or potential customers with whom I have had any dealings as a result of my employment by Pac-West Label." Appellant refused, and was fired for that reason. He sued for wrongful termination under the rule that termination of an employee for refusal to sign an unenforceable covenant not to compete is a wrongful termination in violation of public policy. (D'Sa v. Playhut, Inc. (2000)85 Cal.App.4th 927 [102 Cal.Rptr.2d 495].) *Page 1428 
Notably, the complaint also alleged that the identity of respondents' customers and potential customers were not trade secrets, that respondents had not made any effort to keep the names of customers and potential customers secret, that scores of customer names were on respondents' Web site, and that respondents provided samples of their work, from which customer names could easily be deduced, on request.
Respondents moved for judgment on the pleadings on the ground that the covenant did not violate Business and Professions Code section 16600 (section 16600), but was instead a legal and enforceable clause, so that public policy would not bar appellant's termination. The trial court granted the motion, finding that the provision was narrowly drawn and meant to protect respondents' legitimate propriety interest in customer information appellant obtained as a result of his employment.
 DISCUSSION (1) Section 16600 provides that "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The exceptions are found in Business and Professions Code sections 16601 and 16602, which "permit broad covenants not to compete in two narrow situations: where a person sells the goodwill of a business, and where a partner agrees not to compete in anticipation of dissolution of a partnership. The latter sections reinforce the conclusion that covenants not to compete in contracts other than for sale of goodwill or dissolution of partnership are void." (Kolani v. Gluska (1998)64 Cal.App.4th 402, 405 [75 Cal.Rptr.2d 257].)
Respondents' position is that this is not a true covenant not to compete, but a mere limited restrictive covenant not to solicit which does not run afoul of section 16600, so that D'Sav. Playhut, Inc., supra, 85 Cal.App.4th 927 does not apply. They point to the ways that this clause differs from what might be termed a traditional noncompetition clause: this contract did not prevent appellant from continuing in his profession or trade, or from working for a competitor or former customer, or from accepting the business of former customers if they solicited him, or from soliciting former customers with whom he had no dealings while he was respondents' employee. They also point out that the covenant is time limited, and would restrict appellant's activities for only one year after his employment ended. *Page 1429 
Respondents are in general right on the facts.[2] (2)
This clause is less restrictive, and less anticompetitive, than the broad, traditional anticompetitive clauses they compare it to. It is nevertheless anticompetitive — why else would they ask employees to sign it? More to the point, "Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets." (Moss,Adams Co. v. Shilling (1986) 179 Cal.App.3d 124, 129
[224 Cal.Rptr. 456] (Moss, Adams).)
Respondents argue that Moss, Adams is incorrect and out of line with the cases which precede it. They cite Gordon v.Landau (1958) 49 Cal.2d 690 [321 P.2d 456], Gordon v. Schwartz
(1956) 147 Cal.App.2d 213 [305 P.2d 117], and Gordon v.Wasserman (1957) 153 Cal.App.2d 328 [314 P.2d 759], all of which are trade-route cases involving salesmen who quit the same house-to-house installment sales business. Those salesmen visited each home once a week on a scheduled day, collected payments, and sold new merchandise to regular customers who could be counted on to buy month after month and year after year. The salesmen knew not just the customer's identity, but the balance due, products purchased in the past, previous payments, and the source of the referral. (Gordon v. Landau, supra, 49 Cal.2d at p. 691.)
As respondents argue, the cases hold that a covenant which barred the salesmen from soliciting business from customers for one year after termination of employment passed muster under section 16600. However, respondents leave out the core of the cases' reasoning: the information about the customers could be protected because it was confidential, proprietary, and/or a trade secret. Gordon v. Landau, supra, 49 Cal.2d at page 694, said "Plaintiffs' preferred customers are a real asset to their business and the foundation upon which its success, and indeed its survival, rests. It thus logically follows that a list of such customers is a valuable trade secret. . . ." (Italics added.) Gordon v. Schwartz found that "`the list of customers, not ordinarily entitled to judicial protection, may become a trade secret, if there is confidential information concerning the value of these customers.'" (Gordon v. Schwartz, supra,
147 Cal.App.2d at p. 217.) Gordon v. Wasserman follows the reasoning of the other two cases.
Fowler v. Varian Associates, Inc. (1987) 196 Cal.App.3d 34
[241 Cal.Rptr. 539], Loral Corp. v. Moyes (1985)174 Cal.App.3d 268 [219 Cal.Rptr. 836] (Loral), and John F. Matull Associates, Inc. v. Cloutier (1987) 194 Cal.App.3d 1049
[240 Cal.Rptr. 211] (Matull), cited by respondents, only prove the point. Fowler concerned an employee who, during his employment, *Page 1430 
became actively involved in establishing a competing business and who refused to sign a confidentiality agreement. In pertinent part, the case holds that "agreements designed to protect an employer's proprietary information do not violate section 16600." (Fowler v. Varian Associates, supra, 196 Cal.App.3d at p. 44, italics added.) Loral concerned a contract which prevented employees from raiding the former employer's staff. In pertinent part, it noted that "Section 16600 does not invalidate an employee's agreement not to disclose his former employer'sconfidential customer lists or other trade secrets or not to solicit those customers." (Loral, supra, 174 Cal.App.3d at p. 276, italics added.) Matull, in which a business sought an injunction against a former officer, agreed with Loral that an employer may protect confidential customer lists and other trade secrets, and found that the clause at issue did just that. (Matull, supra, 194 Cal.App.3d at p. 1055.)
Here, the allegation of the complaint, binding for purposes of the motion, is that the identity of respondents' customers isnot confidential, and not a trade secret. Respondents argue that even if that is so, the identity of those customers who were appellant's customers is confidential. They also point to some other portions of the confidentiality agreement appellant was asked to sign, in which the employee was asked to acknowledge that during the course of employment he would obtain confidential information with potential economic value, including information obtained from clients about past projects and information about clients. Respondents conclude that the clause protects trade secrets, citing Civil Code section 3426.1, subd. (d)(1), part of the Uniform Trade Secrets Act, which defines a trade secret as a "formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; . . ." (Respondents omit the second prong of the cited definition, "and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.")
(3) Respondents may turn out to be right that the information which is the subject of the nonsolicitation clause is a trade secret, but they are wrong when they argue that the issue is established for purposes of this motion. The issue of whether information constitutes a trade secret is a question of fact. (In re Providian Credit Card Cases (2002) 96 Cal.App.4th 292,300 [116 Cal.Rptr.2d 833].) Whether the identity of appellant's customers is confidential has not yet been proved or disproved. The recitals alone do not establish anything. Labeling information as a trade secret or as confidential information does not conclusively establish that the information fits this description. (Morlife, Inc. v. Perry (1997)56 Cal.App.4th 1514, 1522 [66 Cal.Rptr.2d 731].) *Page 1431 
We must also reject respondents' suggestion that the clause can be saved if it is given a narrow reading. They cite the rule that "A contract must be construed to be lawful if possible." (Loral,supra, 174 Cal.App.3d at p. 276.) There is of course another rule, that courts reform contracts only where the parties have made a mistake. (Kolani v. Gluska, supra, 64 Cal.App.4th at p. 407.) More to the point, even if there are circumstance under which a court could do as respondents suggest, it cannot be done under these circumstances. Appellant was presented with the contract as it was written and (for purposes of this motion) was fired for refusing to sign it, as written. The question before us is the legal effect of those acts, a question which cannot be addressed by a post-hoc narrow construction of the contract.
Nor do we agree with respondents that American CreditIndemnity Co. v. Sacks (1989) 213 Cal.App.3d 622
[262 Cal.Rptr. 92] or Morlife, Inc. v. Perry, supra, 56 Cal.App.4th 1514, invalidate the rule that nonsolicitation clauses are allowable only when they protect trade secrets or confidential proprietary information.
(4) In Morlife, a roofing company sued a former employee for misappropriation of trade secrets under the Uniform Trade Secrets Act, and for unfair competition. The trial court found that the roofing company's customer list constituted a trade secret. The Court of Appeal conducted a substantial evidence review and agreed. After a useful discussion of the facts which can establish that a customer list is a trade secret,[3]
the Court turned to the question of "use" or "misappropriation" of those secrets. In its discussion, the Court criticized the distinction Moss, Adams drew between customers with whom a former employee became acquainted during employment, and all other customers. Moss, Adams found that the identity of the first kind of customers was not a trade secret, in that employees may not be required to "wipe clean the slate of memory." (Moss,Adams Co. v. Shilling, supra, 179 Cal.App.3d at p. 129.)Morlife disagreed, finding that there was no legitimate reason for characterizing the two kinds of customers differently. (Morlife, supra, 56 Cal.App.4th at p. 1526.) American CreditIndemnity Co. v. Sacks, supra, 213 Cal.App.3d 622, had a similar disagreement with Moss, *Page 1432 Adams, finding that "the fact that an employee personally renders service to a customer of an employer is not determinative of the trade secret issue." (Id. at p. 636.)
We need not opine on this criticism of Moss, Adams, because that portion of Moss, Adams has nothing do with our decision here. Indeed, although appellant relies heavily on Moss, Adams,
it is neither the source nor the final word on the established rule that "in the absence of a protectable trade secret, the right to compete fairly outweighs the employer's right to protect clients against competition from former employees." (AmericanCredit Indemnity Co. v. Sacks, supra, 213 Cal.App.3d at p. 634.)
 DISPOSITION
The judgment is reversed. Appellant to recover costs on appeal.
Turner, P.J., and Grignon, J., concurred.
[1] The defendants, respondents here, are Impaxx, Inc., AC Label, Inc., Pac-West Label, AC Label Company, Impaxx Western Packaging Group, C. Lars Ho-Tseung, alleged to be the president of AC Label, and Cornelius Bor, alleged to be the manager of Pac-West.
[2] Appellant does argue that under the rule against surplusage, "take away" must mean something more than "call on" or "solicit," and could mean that he could not do business with respondents' customers or potential customers. An interesting argument, but one which we need not reach.
[3] For instance, Morlife observed that "courts are reluctant to protect customer lists to the extent they embody information which is `readily ascertainable' through public sources, such as business directories. [Citations.] On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. . . . As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret. [Citation.]" (Morlife, supra, 56 Cal.App.4th at pp. 1521-1522.) Those are the kinds of facts which are relevant to the question. On this judgment on the pleadings, those are the kind of facts we do not have. *Page 1433