BAKER, RESPONDENT, v. TULLOCK, SHERIFF, ET AL., APPELLANTS.

(No. 7,768.)

(Submitted February 24, 1938. Decided March 19, 1938.)

[77 Pac. (2d) 1035.]

*Mr. Merle C. Groene,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. C. E. Baker,* Respondent, *pro se,* submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Herbert L. Phelps recovered judgment against the Union Central Life Insurance Company. Plaintiff Baker acted as attorney for Phelps. On appeal the judgment was reversed and the cause remanded for a new trial. (*Phelps* v. *Union Central Life Ins. Co.,* 105 Mont. 195, 71 Pac. (2d) 887.) The insurance company then filed a cost bill and obtained judgment against Phelps for its costs on that appeal. It then caused execution to be issued and placed in the hands of defendant Tullock, sheriff of Fergus county, and defendant McPherson, sheriff of Valley county, who levied upon the cause of action of Phelps against the insurance company. Plaintiff Baker thereupon served notice upon defendants of a claim for $952.50, for attorney's fees for services rendered in the action, and claimed a lien on the cause of action, and brought this action to enjoin the defendants from selling it.

On the filing of the complaint and a supporting affidavit an order to show cause and a temporary restraining order were issued. Defendants thereupon filed a motion, supported by affidavit, to dissolve the temporary restraining order. After hearing, the motion was denied and the restraining order made effective *pendente lite*. This appeal followed.

The correctness of the court's decision depends partially upon the construction to be placed upon section 8993, Revised Codes. It provides: ''The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.''

Defendants contend that section 8993 gives merely an inchoate right to a lien, but that the lien of the attorney does not actually attach until there has been a verdict, report, decision, or judgment in his client's favor. Plaintiff contends that the lien attaches from the commencement of the action and attaches to the cause of action, and thereafter also attaches to the verdict, report, decision, or judgment in his client's favor.

Section 8993 is a remedial statute which should be construed in advancement of the remedy, and ''so as to secure and protect, and not defeat, the rights and objects intended by its provisions.'' (*Crowley* v. *Le Duc,* 21 Minn. 412.) It is competent for the legislature to provide for an attorney's lien on the client's cause of action even though the cause of action is ''an intangible, incorporeal something,'' and ''the lien which the statute fixes on the plaintiff's right of action follows the transition, without interruption, and simply attaches to that into which the right of action is merged. If the judicial recovery is obtained, the lien attaches to that; if a compromise agreement is made, the lien attaches to that; and in each case

the attorney's interest is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent.'' (*Illinois Central R. Co.* v. *Wells,* 104 Tenn. 706, 707, 59 S. W. 1041, 1043; and compare *Tompkins* v. *Nashville, Chattanooga & St. Louis R. Co.,* 110 Tenn. 157, 72 S. W. 116, 61 L. R. A. 340, 100 Am. St. Rep. 795)

The clause in our statute which starts with the words ''which attaches'' was not intended to restrict but to enlarge or extend the attorney's lien. Without the clause there was room for doubt as to whether the lien would extend to the verdict, report, decision, or judgment. After judgment is recovered, the ▇▇ cause of action is merged in the judgment, and for that reason we think the legislature added the phrase to make sure that the lien which theretofore existed on the cause of action should attach to the judgment and thereafter to the proceeds of the verdict, report, decision, or judgment. Such is the interpretation of an identical statute made by the supreme court of Missouri. (*Young* v. *Levine,* 326 Mo. 593, 31 S. W. (2d) 978; *Noell* v. *Missouri Pac. R. Co.,* 335 Mo. 687, 74 S. W. (2d) 7, 94 A. L. R. 684.)

In *Schempp* v. *Davis,* 201 Mo. App. 430, 211 S. W. 728, 730, the court, in speaking of an identical statute, said: ''The attorney's lien is not only on the cause of action—which includes both his client's right and the proceeding for redress—but also on the proceeds of that cause of action successfully enforced. In other words, the lien extends to the fruits of that successfully enforced cause of action.'' This court has also held that an attorney may assert his lien prior to judgment. (*Walsh* v. *Hoskins,* 53 Mont. 198, 162 Pac. 960.)

Defendants contend that if plaintiff has a lien on the cause of action, there is nothing to prevent the defendants from selling the cause of action subject to the lien. Plaintiff contends that under sections 8283 and 8285, Revised Codes, before defendants may sell the cause of action they must pay or tender to plaintiff the amount of his lien. Whether sections 8283 and 8285 have application here we need not determine. This court has held that a cause of action is subject to execution (*State*

*ex rel. Coffey* v. *District Court,* 74 Mont. 355, 240 Pac. 667), excepting those based upon tort. (*Coty* v. *Cogswell,* 100 Mont. 496, 50 Pac. (2d) 249; *Toole* v. *Paumie Parisian Dye House,* 101 Mont. 74, 52 Pac. (2d) 162.)

In the *Coffey Case* it does not appear that there was any objection to the sale other than upon the ground that the procedure in making the levy and sale was not proper. The sale was held to have been improperly made, and it was set aside. The court held that a cause of action was subject to execution, levy, and sale. But there no one was objecting to the sale, as here. In executing the writ, the sheriff with reference to things in action may either collect or sell them. (Sec. 9431.) He has discretion to do either. His discretion can be controlled by the court. The most effective way to accomplish the collection of a thing in action is to permit the pending action to go to trial on the merits. The sale of a cause of action at public auction is a poor method of ascertaining its value.

So far as the case before us is concerned, we hold that the ▮ trial court did not abuse its discretion in enjoining a sale of the cause of action under execution. Attorneys are prohibited from buying a thing in action with the intent and for the purpose of bringing an action thereon. (Sections 8980 and 8981.) This would perhaps prevent them from buying a pending cause of action. Had the cause of action been sold at execution sale, it is extremely unlikely that anyone but defendant would have offered a bid. By becoming the purchaser of the cause of action it then, in legal effect, would have become plaintiff and defendant in the action. It would be a violent assumption to suppose that it, as plaintiff, would prosecute with much vigor the case against itself as defendant.

There are cases which, under such circumstances, would permit the attorney to prosecute the action to protect his lien. (2 Thornton on Attorneys at Law, sec. 674, pp. 1076 and 1077.) At least one court held that this results in a "bundle of confusion." (*Burpee* v. *Townsend,* 29 Misc. 681, 61 N. Y. Supp. 467.) To avoid this situation we think the trial court, because of section 9431 as well as in the exercise of its inherent equi-

table powers to preserve the cause of action *in statu quo*, had the right to enjoin the execution sale. Such power was alluded to in the case of *Citizens' State Bank* v. *First Nat. Bank of Galveston*, 56 Tex. Civ. App. 515, 120 S. W. 1141, 1144, though under facts different from those here, where the court said: ''Ordinarily the rights of a senior mortgagee are not prejudiced by a sale of the mortgaged property under a junior mortgage. The purchaser, having notice of the mortgage lien, would buy the property subject thereto. If, after the purchase, the rights of the senior lienholder are jeopardized, he may sequester the property in a suit against the mortgagor, and make the purchaser a party, and in the proceeding establish his superior right to the property as security for his debt. But it does not follow that equity will not interfere to prevent a sale and to hold the property *in statu quo* when it appears that such action is reasonably necessary to protect the security of the prior lienholder. This would be proper in any case when the property, being movable, might become so scattered, or so lose its identity, as to be placed beyond the reach of a writ of sequestration, or to render necessary the issuance of as many writs as there were purchasers of the various articles of mortgaged property, and the joinder in the foreclosure proceedings of that many defendants. In the instant case it is shown that the sheriff had levied upon, and advertised for sale, fifty head of Jersey cows. In making the sale the sheriff would have the right, unless directed otherwise, to sell them singly. The purchasers could, unless prevented by proper process, remove their purchases out of the county or state, or conceal the same so that it could not be found, and by so doing defeat the plaintiff's lien, or entail unnecessary trouble and expense upon it in subjecting the property to its mortgage. Under the circumstances we do not think that it was error for the judge by injunction to maintain the *status quo* until the equities of the parties can be determined on final trial.'' To the same effect is *Barrier* v. *Brinkman*, (Tex. Civ. App.) 80 S. W. (2d) 365.

Under facts presenting the same legal question in practically the same manner as here, the supreme court of Iowa held it was

proper to enjoin an execution sale by stay order. (*Brenton Bros.* v. *Dorr,* 213 Iowa, 725, 239 N. W. 808, 810.) The court in that case said: "If the applicant shows some reason why judgment should not be enforced against him at the present time because of an independent proceeding and to proceed with the execution would impair his equities or render the independent proceedings ineffective, or otherwise prejudice him, the court may grant a reasonable stay of execution and afford him an opportunity to establish his claim and to escape the inequitable use of the writ. [Citing many cases.] Under the aforesaid recited facts in this case, we reach the conclusion that the court had the inherent power to issue the stay order which it did issue, and did not abuse his discretion in so doing."

The district court of appeal of California, in *Meserve* v. *Superior Court,* 2 Cal. App. (2d) 468, 38 Pac. (2d) 453, reached the opposite conclusion, but we prefer to follow the rule announced by the supreme court of Iowa.

This procedure amply protects defendant, because, if plaintiff Phelps recovers judgment, the insurance company is protected by having the right to offset one judgment against the other. (*Verry* v. *Barnes,* 154 Minn. 252, 191 N. W. 589, 31 A. L. R. 707.) On the other hand, if plaintiff fails to recover in the action, defendant has lost nothing by having the execution sale enjoined.

We cannot say that the court abused its discretion in granting the order appealed from. The order is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.