[Nos. 726-2; 766-2.   Division Two.   May 1, 1974.]

JOHN A. PAGLIA, *Respondent*, v. JOHN BRESKOVICH *et al.*, *Appellants*.

JOHN BRESKOVICH, *Appellant*, v. MARTINOLICH SHIPBUILDING, CORPORATION, *Respondent*.

*James M. Healy, Jr.,* and *Healy & Godderis,* for appellants.

*John A. Paglia,* for respondents.

PETRIE, J.—John Breskovich, plaintiff, filed a complaint against defendant, Martinolich Shipbuilding Corporation, in Pierce County Superior Court, cause No. 196536, alleging damages in excess of $100,000 resulting from an alleged breach of contract to build a vessel. Martinolich counterclaimed to recover for an alleged unpaid balance of $15,000 due on the contract. John Paglia is counsel for Martinolich

and also is assignee for collection of a judgment creditor of Breskovich in Pierce County Superior Court, cause No. 185187. The unpaid balance on the judgment against Breskovich is approximately $1,600.

Under a general writ of execution issued in cause No. 185187 at Paglia's request, the sheriff of Pierce County levied upon Breskovich's unliquidated claim No. 196536 against Paglia's client, Martinolich. Paglia purchased this unliquidated claim for $750 at a sheriff's sale on October 28, 1971. A week later Paglia wrote a letter to Breskovich's counsel advising him that his services were no longer needed in cause No. 196536.

Shortly thereafter, Paglia moved to be substituted as party plaintiff in lieu of Breskovich in cause of action No. 196536. Breskovich objected to the substitution and moved to set aside the sheriff's sale which had been conducted in cause No. 185187. After argument on the motions, the trial court announced on November 22, 1971, that the sheriff sale would be set aside on condition that Breskovich pay to Paglia the full amount of the unpaid judgment together with interest, costs and attorneys' fees within 15 days, otherwise the sale would not be set aside.

On December 6, 1971, Breskovich filed a motion seeking additional relief supported by his counsel's affidavit, which asserted, in part, that Breskovich had borrowed funds sufficient to comply with the court's announced ruling of November 22, 1971, but three other judgments against him, totaling approximately $20,000 remain unsatisfied. Paglia as assignee of one of these other judgment creditors had already obtained another writ of general execution,[1] the sheriff had once again levied upon Breskovich's unliquidated claim, and sale thereon had been set for December 20, 1971. The affidavit also recited that Breskovich's only asset was the claim he had against Martinolich. Additional relief

---

[1]The record indicates that on December 3, 1971, the sheriff levied on Breskovich's claim in cause No. 198454, and gave notice that the sale would be conducted on December 20, 1971. In that action, Paglia was designated plaintiff as assignee of Tacoma Marine Supply, Inc.

which Breskovich sought included an order quashing all writs of execution issued, staying issuance of any further writs, and enjoining all sales thereunder until such time as judgments of record against him could be satisfied out of whatever judgment may be obtained at the conclusion of his cause of action against Martinolich.

At the hearing on this latter motion Paglia was quite candid with the court. His position was openly and emphatically declared: "We are intending to take away their ability to prosecute the action. I mean make no mistake about it."

The trial court, apparently under the impression that its authority to stay proceedings was limited solely to provisions of RCW 6.08 and CR 62, was obviously distressed at its inability to grant any type of equitable relief which Breskovich sought. Consequently, after hearing the matter, the court entered two orders on December 20, 1971: (1) substituting Paglia in lieu of Breskovich as plaintiff in cause No. 196536, but continuing Breskovich as a party to the action "in effect as a defendant incident to" Martinolich's counterclaim; (2) in cause No. 185187, denying Breskovich's motions to set aside the sheriff's sale and for additional relief. Breskovich has appealed both orders to this court.

The underlying issue to be decided in this appeal is whether or not a judgment debtor may invoke any equitable power of the superior court in his quest for an order to set aside a sheriff's bill of sale of personal property which purports, after sale on notice and following levy under a writ of execution, to sell and convey the debtor's unliquidated and undetermined independent cause of action against another party when the sale completely destroys the judgment debtor's ability to prosecute that independent cause of action to judgment. We hold that the court does possess inherent supervisory power over its own process, exercisable when the demands of justice to all parties can be reasonably satisfied, to set aside a sheriff's bill of sale

which effectively deprives the judgment debtor an opportunity to establish his claim.

We start with the statutory pronouncement that:

> All property, real and personal, of the judgment debtor, not exempted by law, shall be liable to execution.

RCW 6.04.060.

Fifty years ago that statute was the foundation stone upon which a levy on an unliquidated and undetermined claim of indebtedness was supported even though the alleged indebtedness was due from the assignor of the party at whose request the levy was made. *Johnson v. Dahlquist*, 130 Wash. 29, 225 P. 817 (1924). The *Johnson* court reasoned rather succinctly:

> But it is contended that the respondents should not be permitted to levy upon that which they themselves owe to the judgment debtor. But why not? It is property. It is capable of being transferred. It is capable of being converted into a judgment which is subject to execution. It is an asset of the judgment debtor, and why should not his assets, whatever their nature, be taken to satisfy a judgment? We cannot see any logical reason why such property should not be levied on.

*Johnson v. Dahlquist, supra* at 33.

In part, at least, the *Johnson* court based its conclusion upon the premise that the claim of indebtedness had a capability of being converted into a judgment, which, itself was subject to execution. In a more recent opinion, a unanimous en banc court exhibited a somewhat tortured reluctance to extend the area of the *Johnson* rule's application. *United Pac. Ins. Co. v. Lundstrom*, 77 Wn.2d 162, 459 P.2d 930 (1969).

In *Lundstrom*, the United Pacific Insurance Company was awarded a judgment against one Lundstrom, which arose from an agreement in which Lundstrom and a Milmanco Corporation had promised to hold United Pacific harmless from any loss on a performance bond. United Pacific had previously dismissed with prejudice its claim against Milmanco. The court also entered an order award-

ing Lundstrom a judgment over and against Milmanco Corporation, based upon a separate agreement between Lundstrom and Milmanco. The judgment over was in such amounts as Lundstrom should pay from time to time upon the judgment in favor of United Pacific. On appeal both the judgment and the order awarding judgment over were affirmed. Prior to judgment, United Pacific had obtained a writ of attachment and had levied upon Lundstrom's cause of action against Milmanco Corporation. After judgment, the sheriff's attempt to proceed to sale was subjected to a motion to quash. The *Lundstrom* court quashed the sale and vacated the writ of attachment. The *Lundstrom* court's announced reason appears at pages 172-73:

> But whereas in *Johnson* the value of the attached cause of action would be mathematically ascertainable when judgment was rendered on the claim, that was not true here. The uncertainty and contingency still existed after Lundstrom had been awarded a judgment. The value of his judgment could not be mathematically calculated with any degree of certainty before something else happened. Lundstrom's judgment against Milmanco was only for such sums as he should thereafter pay on United's judgment against him. If he paid nothing, his judgment was worthless. If he paid some amount on United's judgment, then his judgment against Milmanco was worth at least an amount equal to what he had paid. His judgment against Milmanco did not therefore remove the uncertainty and the contingency which existed at the time of the attachment.

Despite the announced distinction between *Johnson* and *Lundstrom* it is somewhat difficult for us to understand how the *Lundstrom* court unanimously reached its conclusion without specifically overruling *Johnson*, unless in its wisdom it was either: (1) signaling a departure from and presaging the eventual overruling of *Johnson*; or (2) anticipating the likelihood that permitting the sale to proceed would result in United Pacific's ownership of Lundstrom's judgment over and against Milmanco, as well as the judgment which the court had previously awarded against Lundstrom. In this latter instance, the potentiality for a

grossly inequitable result is apparent. Into the hands of one party would fall the control and management of both ends of a lawsuit. The court would not and did not permit even the possibility of such an inequitable development.[2]

Whichever alternative the *Lundstrom* court may have used as the reason to vacate the writ of attachment, it appears to us in the case at bench, that an appropriate motion if made prior to sale, would have to have been granted under the *Lundstrom* rationale. Either the *Johnson* rule has been or ought to be discarded, or else the court ought to exercise its supervisory power over its own process to prevent one party from obtaining control and management of both ends of one lawsuit. Faced with substantially the same situation the Supreme Court of Iowa affirmed a trial court which asserted its inherent supervisory power to prevent an inequitable result. *Brenton Bros. v. Dorr,* 213 Iowa 725, 239 N.W. 808 (1931). *See also Baker v. Tullock,* 106 Mont. 375, 77 P.2d 1035 (1938).

However, in the case at bench, Breskovich did not, prior to sale, move against the writ which had been issued nor did he seek to enjoin the sale which took place on October 28, 1971, after he had notice thereof. Paglia contends, therefore, that upon delivery of the sheriff's bill of sale, all right and title to Breskovich's claim against Martinolich unalterably passed to him (Paglia) as assignee for collection of the judgment creditor in cause No. 185187.

If a trial court can exercise its inherent powers to prevent the likely development of a grossly inequitable result, a fortiori, it ought to be able to exercise the same powers after the inequitable situation develops. When Paglia's bid at the sale left no surplus returnable to Breskovich, and when Paglia wrote to Breskovich's counsel (after sale) that his services were no longer required, there was no need to anticipate the likelihood of an inequitable result—it had already occurred.

---

[2]For a somewhat different analysis of *Lundstrom see: Woody's Olympia Lumber, Inc. v. Roney,* 9 Wn. App. 626, 513 P.2d 849 (1973).

In affirming the vacation of an execution sale where the sale resulted in more than mere collection of the unsatisfied judgment, the Supreme Court declared:

> While the courts have expressed themselves in various language, we are of opinion that the sum and essence of the law upon the question involved in this case is that there is a discretionary power vested in the trial judge, and where it is made to appear that the sale would outrage the right of a judgment debtor if allowed to stand, his discretion will not be controlled, . . .

*Triplett v. Bergman,* 82 Wash. 639, 642, 144 P. 899 (1914).

Both orders appealed from are reversed and the trial court is authorized and advised to exercise such inherent supervisory powers over its own process as is deemed necessary to satisfy the reasonable demands of justice to all parties hereto.

PEARSON, C.J., and ARMSTRONG, J., concur.

PEARSON, C.J. (concurring)—I concur in the analysis made in the majority opinion, and offer some additional reasons. Public policy should not condone the action of counsel for one party to a lawsuit in acquiring ownership of the interest in the lawsuit of the client's adversary. It is noteworthy that such practice is now specifically prohibited by the Code of Professional Responsibility, (CPR) DR 5-103(A).

Furthermore, if the attorney acquires such interest of his client's adversary for the sole purpose of winning the lawsuit by means other than on the merits, the action borders on abuse of legal process. *See Fite v. Lee,* 11 Wn. App. 21, 521 P.2d 964 (1974). This is particularly true where a great disparity exists between the potential value of the cause of action levied upon as compared with the amount of the judgment debt.

Finally, to illustrate the disturbing consequences of respondent's contention, let us suppose that the cause of action levied upon is a personal injury action in which the injured plaintiff, because of severe injuries, suffers great

economic hardship while his lawsuit is pending. Let us suppose further that counsel for the defendant acquires by assignment a judgment debt for medical expenses incurred by the plaintiff as a result of his injuries. Should the law permit counsel for defendant to destroy plaintiff's cause of action by becoming the owner of it? To ask the question is to answer it. The law should never be interpreted so as to subvert justice.

I would reverse the two orders and remand with directions to nullify the sheriff's sale. The judgment creditor has adequate protection via his judgment lien. Furthermore, he is entitled to garnish the proceeds of any judgment Breskovich obtains in his action against Martinolich, or if Martinolich is in fact the assignee of the judgments against Breskovich, they may be asserted as setoffs.

Petition for rehearing denied June 10, 1974.

Review denied by Supreme Court July 30, 1974.