213 P.3d 931 (2009)
MP MEDICAL INC., a California corporation, Appellant,
v.
Philip WEGMAN; Warren Hall and Ruth Ann Hall, husband and wife and their marital community; Halls Pharmacy Services Inc., a Washington corporation; Halls Medical Services Inc., a Washington corporation; and Hall's Drug Center Inc., a Washington corporation, Respondents.
No. 61674-9-I.
Court of Appeals of Washington, Division 1.
August 3, 2009.
*933 Mark Kimball, Alex Larkin, Attorneys at Law, Bellevue, WA, for Appellant.
Jacob M. Downs, Paul A. Harrel, Williams Kastner & Gibbs PLLC, Seattle, WA, for Respondents.
LEACH, J.
¶ 1 MP Medical Inc. appeals the trial court's refusal to stay the execution sale of its appeal in this case, the court's summary dismissal of its claims for breach of contract and tortious interference with a contractual relationship, and the court's judgment against MP Medical on the award of attorney fees.[1] Because the trial court was aware that respondents sought to dismiss MP Medical's case by purchasing its appeal, we hold that the trial court should have exercised its inherent supervisory authority over its own process to prevent one party from controlling both sides of one lawsuit and preserve access to the court. On the merits, we affirm the dismissal of MP Medical's claims for breach of contract and tortious interference with a contractual relationship because MP Medical's agreement, which is governed by California law, violates a California statute limiting nonsolicitation clauses in employment contracts. We also affirm the award of attorney fees.

Background
¶ 2 MP Medical, a California corporation, sells, delivers, and repairs durable medical equipment (DME) and home medical equipment. The company was formed in 1993 by Madelyn Phillips. It expanded its operations to Federal Way, Washington, in 2004 with Philip Wegman as its employee. Wegman signed an employment agreement with MP Medical, which provided that it was to be "governed by, construed, and enforced in accordance with the laws of the State of California." The agreement also provided that Wegman would not disclose any trade secrets or confidential information and, following his termination, would not contact or solicit any of MP Medical's customers. The agreement further stated that the prevailing party in any litigation would be entitled to recover all reasonable attorney fees, costs, and necessary expenses.
*934 ¶ 3 MP Medical's corporate revenues declined and Phillips considered selling the Federal Way business to Wegman in early 2006, but they never reached an agreement. Wegman told his former employer, Warren Hall, about Phillips's offer, which lead to discussions between Hall and Phillips in January and February 2006.[2] They reached no agreement. In March 2006, Phillips listed the company for sale, but she received no offers.
¶ 4 At the end of that month, Wegman gave his 30-day resignation notice; his last day of employment was at the end of April 2006. MP Medical did not attempt to find a replacement manager for Wegman. Shortly afterwards, Wegman returned to work as a DME salesperson for Hall.
¶ 5 On August 4, 2006, MP Medical filed this lawsuit, naming Wegman, Warren Hall and his wife, Ruth Ann Hall, and Halls Pharmacy Services Inc. as defendants.[3] MP Medical asserted four causes of action: violation of the Uniform Trade Secrets Act (UTSA), tortious interference with a business relationship, breach of contract, and tortious interference with a contractual relationship.[4]
¶ 6 On December 7, 2007, the parties filed cross motions for summary judgment. The trial court denied MP Medical's motion for summary judgment on January 8, 2008. On January 25, 2008, the trial court partially granted Wegman's motion for summary judgment, dismissing the breach of contract claim because its nonsolicitation provisions violated section 16600 of the California Business and Professions Code. Wegman filed a motion for reconsideration, arguing that Hall could not have interfered with an agreement that was unenforceable. The trial court granted the motion and dismissed the tortious interference with a contractual relationship claim. MP Medical's two remaining claims were tried to a jury in April 2008. The jury returned verdicts in favor of Wegman on both claims. In a special verdict, the jury found that MP Medical had no trade secrets.
¶ 7 After trial, Wegman renewed a motion for attorney fees, which the court granted on May 8, 2008. On the same day, the court entered judgment on the verdict for Wegman. On June 6, 2008, the court awarded Wegman $109,157.17 in attorney fees and costs and entered supporting findings of fact. In its written findings of fact, the court explained the award:
The attorneys' fees and costs associated with the defense of the four claims are intertwined to the point where segregation of each billing entry to a specific claim is not possible. However, an equal amount of time, effort, and resources was spent on defending each of the four claims. Therefore, the attorneys' fees and costs incurred in defending the two claims under which Defendants are entitled to an award of attorneys' fees and costs equates to one-half of the total amount of attorneys' fees and costs incurred at the time Plaintiff's claim of tortious interference with contractual relations was dismissed, which totals $109,157.17 ($96,234.00 in attorneys' fees and $12,717.73 in costs).
¶ 8 MP Medical appealed the trial court's dismissal of its claims for breach of contract and tortious interference with a contractual relationship, as well as the award for attorney fees and costs. MP Medical did not supersede the judgment.
¶ 9 Wegman sought to enforce the judgment through a writ of execution on MP Medical's pending appeal. MP Medical filed a motion to controvert wrongful seizure by writ of execution, which the trial court denied on November 26, 2008. MP Medical filed an emergency motion with this court, seeking immediate review of the trial court's denial of its motion. On December 10, 2008, a commissioner of this court granted the emergency *935 motion and stayed the pending December 19, 2008, sale.

Standard of Review
¶ 10 This court reviews an order granting summary judgment de novo, engaging in the same inquiry as the trial court.[5] All facts in the record and reasonable inferences must be drawn in a light most favorable to the nonmoving party.[6] Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[7] Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion.[8] We also review questions of law de novo.[9]

Discussion

A. Levy on Appeal
¶ 11 We first must decide whether the trial court properly determined that the sale of MP Medical's appeal should go forward in light of Wegman's admission that he sought to dismiss MP Medical's case by purchasing its appeal. Wegman contends that levying on MP Medical's appeal is authorized by RCW 6.17.090, which broadly provides that "[a]ll property, real and personal, of the judgment debtor that is not exempted by law is liable to execution." Wegman further cites our Supreme Court's decision in Johnson v. Dahlquist,[10] in which the court held that the nearly identical language in a former version was all-inclusive and authorized the levy on a debt the judgment creditor owed the judgment debtor. Relying on Division Two's decision in Paglia v. Breskovich,[11] MP Medical challenges the viability of Johnson and asserts that the reasonable demands of justice should prevent one party from acquiring control of both sides of a lawsuit.
¶ 12 Neither argument is entirely correct since we construe Paglia as an exception to the Johnson rule that "all property" is subject to execution. In Paglia, Breskovich filed a breach of contract action against Martinolich Shipbuilding Corporation.[12] Paglia, Martinolich's attorney, was also assignee of an unpaid judgment against Breskovich in another case.[13] Paglia obtained a writ of execution based on the unpaid judgment and then purchased Breskovich's breach of contract claim against Martinolich at a sheriff's sale after the sheriff levied on it.[14] When Breskovich moved to set aside the sheriff's sale, the trial court denied his motion.[15] Division Two reversed, holding that it was within the trial court's equitable power to set aside the sheriff's sale.[16] While acknowledging Johnson's broad reading of the execution statute,[17] the Paglia court stated that the court's decision in United Pacific Insurance Co. v. Lundstrom[18] represented "a somewhat tortured reluctance to extend the area of the Johnson rule's application"[19] and could only be interpreted in one of two ways: "Either the Johnson rule has been or ought to be discarded, or else the court ought to *936 exercise its supervisory power over its own process to prevent one party from obtaining control and management of both ends of one lawsuit."[20] The Paglia court emphasized that allowing one party to control both sides of the lawsuit was "grossly inequitable" because the judgment debtor would be deprived of the opportunity to establish his claim.[21]
¶ 13 We are bound by the decisions of our state Supreme Court and err when we fail to follow them.[22] Since our Supreme Court does not generally overrule binding precedent sub silentio,[23] we do not agree with Paglia's suggestion that the Johnson rule has been discarded. But we do agree with Paglia that the trial court has supervisory authority over its own process and should exercise that power to prevent the grossly inequitable situation where one party destroys the opposing party's cause of action by becoming the owner of the cause of action under review.[24] In O'Connor v. Matzdorff,[25] our Supreme Court first recognized that Washington courts retain an inherent power to protect access to the appellate process when justice requires it.[26] While MP Medical has no constitutional right to appeal in this case,[27] allowing one party to destroy the opposing party's appeal by becoming its owner through enforcement of the very judgment under review is fundamentally unjust. The trial court erred when it failed to exercise its inherent power to prevent this from happening.

B. Claims for Breach of Contract and Tortious Interference
¶ 14 The trial court dismissed MP Medical's breach of contract claim on grounds that the employment agreement violated section 16600 of the California Business and Professions Code.[28] Specifically, the court held that the "non-solicitation provisions contained in 7.1 and 7.4 cannot be enforced ... because there is no reasonable geographic restriction."[29]
¶ 15 Section 16600 states that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The restrictions of this section apply to nonsolicitation provisions.[30]
¶ 16 In this case, provisions 7.1 and 7.4 of the agreement provide as follows:
7.1 Preservation. Employee expressly acknowledges that during the course of his employment with Employer, he will have access to trade secrets, proprietary information and confidential information of Employer *937 including, but not limited to, customer lists, customer information as well as methods of doing business of Employer. Employee expressly agrees that all such information is and shall remain the property of Employer, and that Employee shall not duplicate, photocopy, transcribe or remove any such information, records or property from the premises of Employer. Employee further agrees that both during and after his term of employment, Employee shall protect and preserve the confidential and proprietary nature of all such information and shall not: (i) disclose such information to any other person or entity with [sic] Employer's express authorization; (ii) use such information to the advantage of himself or any other person or entity; or (iii) following the termination of Employee's employment in any way contact or solicit any existing or previous client or customer of Employer.
....
7.4 Non-Solicitation of Clients and Customers.

Employee shall not solicit any of Employer's customers or clients either during or after termination of Employee's employment.
MP Medical contends that these nonsolicitation provisions, despite the lack of geographic restriction, do not violate section 16600 because they do not constitute a noncompetition agreement. MP Medical asserts "[t]hese provisions do not bar Wegman from working for a competitor, from being employed within his field of expertise, or from pursuing any potential customers who were not customers of MP Medical."
¶ 17 But in Thompson v. Impaxx, Inc.,[31] the California Court of Appeal rejected similar arguments in determining that a nonsolicitation provision constituted a noncompetition agreement. There, an employer terminated an employee who refused to sign a nonsolicitation agreement.[32] Under the agreement, the employee would have been prohibited for one year following his termination from calling on, soliciting, or taking away any of the employer's customers or potential customers with whom the employee had had dealings.[33] According to the employer, the agreement was not a true covenant not to compete, but a "mere limited restrictive covenant not to solicit" that did not violate section 16600.[34] The employer argued that the agreement "did not prevent appellant from continuing in his profession or trade, or from working for a competitor or former customer, or from accepting the business of former customers if they solicited him, or from soliciting former customers with whom he had no dealings while he was respondents' employee."[35]
¶ 18 In rejecting these arguments, the Thompson court stated, "This clause is less restrictive, and less anticompetitive, than the broad, traditional anticompetitive clauses [respondents] compare it to. It is nevertheless anticompetitivewhy else would they ask employees to sign it?"[36] The Thompson court also reiterated the rule that, under section 16600, "nonsolicitation clauses are allowable only when they protect trade secrets or confidential proprietary information."[37]
¶ 19 MP Medical argues that this trade secrets exception to section 16600 applies to its nonsolicitation provisions. Under the California UTSA, information is protected as a trade secret if it
(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

*938 (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[[38]]
While the existence of a trade secret is a factual question, "summary judgment may be appropriate in cases where a party has failed to meet its burden of proof for the purposes of a summary judgment motion by generating through evidentiary submissions a genuine issue of material fact."[39]
¶ 20 MP Medical asserts that its customer list is a trade secret.[40] A customer list may qualify as a trade secret if it satisfies both prongs of the statutory definition.[41] But in this case, MP Medical did not present evidence about its customer list sufficient to raise a genuine issue of material fact. Specifically, it offered no evidence that its customer list derives independent economic value from not being generally known to the public, the first prong of the trade secret definition.
¶ 21 California courts have held that "information which is not exclusive or is generally in use by good faith competitors ... cannot be classified as a trade secret."[42] Here, it is undisputed that the identities of the referral sourceswhich include the area agencies on aging, such as Aging and Adult Care of Central Washington (AACCW), agency caseworkers, and social workersare known in the industry. Thus, anyone entering the industry would be able to discover the identities of these referral sources and solicit them. Furthermore, MP Medical does not dispute that the relationships between referral sources and DME suppliers are nonexclusive.[43] These undisputed facts show that the identities of MP Medical's customers do not derive value from not being generally known to the public or to MP Medical's competitors. In other words, the customer list does not confer any substantial business advantage by enabling MP Medical's competitors to solicit more selectively and effectively.[44]
¶ 22 The jury's special verdict on the trade secrets claim supports the conclusion that the customer list does not constitute a trade secret.[45] Although that claim was tried under the Washington UTSA, the versions of the UTSA adopted in both states require that trade secrets derive independent economic value from not being generally known. As stated above, the undisputed facts establish that the identities of the referral sources are commonly known in the industry, so the customer list is not a trade secret.
¶ 23 MP Medical compares its customer list to the one held to be a protectable trade secret in Gordon v. Landau.[46] But in that case, the undisputed evidence showed that the customer list provided a substantial business advantage: the salesman had sold goods *939 to at least 117 of the plaintiffs' preferred customers. In this case, MP Medical does not present evidence of any such advantage.
¶ 24 MP Medical also compares its customer list to the one in San Jose Construction, Inc., v. S.B.C.C., Inc.,[47] in which the court held that a material issue of fact existed as to whether information compiled in the development of a construction bid was a trade secret. But there, the court pointed out that developing a bid involved the production of detailed cost estimates, descriptions of the proposed scope of the project, and measurements of each project building, and cost tens of thousands of dollars in overhead and staff time, in addition to outside design and consultant fees. Noting "the process of generating a viable proposal is far more elaborate than contacting names on a subcontractor list and soliciting their bids," the court concluded that information accumulated in the development of a bid derived independent economic value.[48] Here, MP Medical provides no evidence that submitting a bid on DME equipment is comparable.
¶ 25 MP Medical relies heavily on the language in its employment agreement and confidentiality agreement with Wegman to support its argument that the customer list is a trade secret. MP Medical also points to similar language in Hall's employee policy manual and Hall's employment agreement with Wegman. While confidentiality is a factor in assessing the value placed on that information by the employer, "[l]abeling information as a trade secret or as confidential information does not conclusively establish that the information fits this description."[49] Furthermore, the record shows that the confidentiality of the customer list relates to the protection of patients' identities under state and federal privacy laws, such as HIPAA,[50] and not to the value of the list as a trade secret.
¶ 26 Alternatively, MP Medical appears to assert that, even if the customer list does not qualify as a trade secret, the challenged nonsolicitation provisions are still valid under section 16600 because they protect the customer list as confidential information.[51] According to MP Medical, the provisions should be enforced to prevent unfair competition by Wegman.[52] In support of its argument, MP Medical cites Loral Corp. v. Moyes.[53]Loral, however, is distinguishable. There, a noninterference provision was held valid under section 16600.[54] That provision was similar to provision 7.1 in requiring a former employee to preserve the confidentiality of trade secrets and confidential information and in allowing him to work for a competitor.[55] But Loral involved a breach of contract claim for soliciting employees; the former employee was sued for "raiding" the *940 employees of the plaintiff's business.[56] The portion of the noninterference provision at issue in Loral was the requirement to "not now or in the future disrupt, damage, impair or interfere with [the plaintiff's] business ... whether by way of interfering with or raiding its employees, disrupting its relationships with customers, agents, representatives or vendors or otherwise."[57] Because Loral addresses the solicitation of other employees as a breach of contract, it does not apply here.[58] We also note that California courts have not resolved whether a former employee's use of a former employer's confidential information that is not protected as a trade secret constitutes unfair competition.[59]
¶ 27 Moreover, the record does not support allegations that Wegman used the customer list to compete with MP Medical. MP Medical essentially relies on the same evidence it produced to support its breach of contract claim: the deposition testimony of Wegman and former Hall's employees Debbie Smith-Harris and Jason Rotz. But MP Medical concedes that Wegman "referred" customers to Hall's during the last month of his employment, Smith-Harris "believed" that Wegman's new customers were previously MP Medical's customers, and Rotz "believed" that the van into which he loaded inventory from a Hall's facility belonged to MP Medical. In addition, MP Medical concedes that it did not attempt to hire a replacement manager for Wegman, which undermines its claim that Wegman gained valuable referral source information that he used to Hall's advantage. Wegman and Warren Hall further stated in their depositions that they developed their relationships with referral sources through their own efforts, personal knowledge, and contacts. Thus, the record does not support MP Medical's allegations of unfair competition or raise a question of fact precluding summary judgment on its breach of contract claim.[60]
¶ 28 We similarly conclude summary judgment was appropriate on MP Medical's claim for tortious interference with a contractual relationship. To establish a cause of action for intentional interference with contractual relations, a plaintiff must demonstrate:
(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.[[61]]
In light of the breach of contract claim analysis, MP Medical fails to establish the first element because the agreement was invalid under section 16600.

C. Attorney Fees
¶ 29 MP Medical argues that the trial court erred in awarding attorney fees to Wegman because he failed to expressly plead a contractual right for fees. But Wegman requested fees in his answer, which was sufficient to notify MP Medical that he was seeking attorney fees under the agreement.[62]
*941 ¶ 30 MP Medical next argues that the trial court abused its discretion in determining the amount of fees because it did not segregate fees between MP Medical's four claims. An award for attorney fees is reviewed for an abuse of discretion.[63] If fees are recoverable for only some claims, the award must "reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues."[64] But segregation is not required if the claims are "so related that no reasonable segregation of successful and unsuccessful claims can be made."[65]
¶ 31 Here, the trial court found that the fees and costs associated with the defense of the four claims were "so intertwined" that segregation was not possible.[66] The court further determined that an equal amount of time, effort, and resources was spent on each of the claims, so it limited the amount of the award to the fees incurred in defending the two contract-related claims. The trial court's additional findings, in which it found that the hourly rates and amount of time and effort spent by Wegman's counsel were reasonable, further support the conclusion that the determination of the fee amount was based on tenable grounds.[67] The trial court correctly awarded fees.
¶ 32 On appeal, Wegman requests fees under RAP 18.1. Because Wegman has prevailed on appeal and complied with RAP 18.1, he is entitled to an award of reasonable costs and attorney fees incurred in this appeal.[68]

Conclusion
¶ 33 We affirm the trial court's dismissal of MP Medical's claims for breach of contract and tortious interference with a contractual relationship and its award of attorney fees to Wegman. We award Wegman additional attorney fees on appeal, with the amount to be set by a commissioner of this court upon Wegman's compliance with RAP 18.1(d).
WE CONCUR: DWYER, A.C.J., and APPELWICK, J.
NOTES
[1] We do not address MP Medical's assignment of error regarding the judgment on the verdict form because it was not raised in the trial court. RAP 2.5(a).
[2] Wegman worked from March 2000 until March 2004 for Warren Hall. Hall is the president of Hall's Drug Center Inc., which is the parent company of Halls Pharmacy Services Inc. and Halls Medical Services Inc. All three corporations are based in Centralia and sell DME.
[3] For convenience, we refer to all defendants collectively as "Wegman."
[4] MP Medical filed an amended complaint on December 10, 2007, adding Halls Medical Services Inc. and Hall's Drug Center Inc. as defendants.
[5] Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998).
[6] Wilson, 134 Wash.2d at 698, 952 P.2d 590.
[7] Wilson, 134 Wash.2d at 698, 952 P.2d 590; CR 56(c).
[8] See Alexander v. County of Walla Walla, 84 Wash.App. 687, 692, 929 P.2d 1182 (1997).
[9] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003).
[10] 130 Wash. 29, 31, 33, 225 P. 817 (1924) (holding that judgment creditor could execute on its own judgment debt owed to judgment debtor under Section 518, Rem. Comp. Stat.).
[11] 11 Wash.App. 142, 522 P.2d 511 (1974).
[12] Paglia, 11 Wash.App. at 142, 522 P.2d 511.
[13] Paglia, 11 Wash.App. at 142-43, 522 P.2d 511.
[14] Paglia, 11 Wash.App. at 143-44, 522 P.2d 511.
[15] Paglia, 11 Wash.App. at 144, 522 P.2d 511.
[16] Paglia, 11 Wash.App. at 144-45, 522 P.2d 511.
[17] The version of the statute in Paglia was former RCW 6.04.060 (1929), which contained nearly identical language.
[18] 77 Wash.2d 162, 459 P.2d 930 (1969).
[19] Paglia, 11 Wash.App. at 145, 522 P.2d 511
[20] Paglia, 11 Wash.App. at 147, 522 P.2d 511.
[21] Paglia, 11 Wash.App. at 147, 522 P.2d 511.
[22] 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wash.2d 566, 578, 146 P.3d 423 (2006).
[23] State v. Studd, 137 Wash.2d 533, 548, 973 P.2d 1049 (1999).
[24] Paglia, 11 Wash.App. at 147, 522 P.2d 511.
[25] 76 Wash.2d 589, 458 P.2d 154 (1969).
[26] Hous. Auth. of King County v. Saylors, 87 Wash.2d 732, 742, 557 P.2d 321 (1976) (citing O'Connor, 76 Wash.2d at 600, 458 P.2d 154).
[27] Hous. Auth. of King County, 87 Wash.2d at 742, 557 P.2d 321.
[28] The court ruled that California law applied under provision 9.10 of the agreement. California case law suggests that an entire agreement may be rendered unenforceable when provisions within the agreement violate section 16600. See Kolani v. Gluska, 64 Cal.App.4th 402, 406-07, 75 Cal.Rptr.2d 257 (1998) (applying rule that courts reform contracts only where the parties have made a mistake to invalidate an entire agreement when it contained illegal noncompetition provisions). Because we agree with the trial court's conclusion that the employment agreement violated section 16600, we do not address Wegman's displacement and estoppel arguments.
[29] Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 949, 189 P.3d 285, 81 Cal.Rptr.3d 282 (2008), calls into question the trial court's reason for granting summary judgment. In that case, the California Supreme Court rejected the "narrow restraint" exception to section 16600 in holding that a nonsolicitation agreement was invalid. The record, however, supports other grounds for affirming the trial court's summary judgment dismissal. Int'l Bhd. of Elec. Workers Local Union No. 46 v. Trig Elec. Constr. Co., 142 Wash.2d 431, 435, 13 P.3d 622 (2000).
[30] Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 1428-29, 7 Cal.Rptr.3d 427 (2003).
[31] 113 Cal.App.4th 1425, 7 Cal.Rptr.3d 427 (2003).
[32] Thompson, 113 Cal.App.4th at 1427, 7 Cal. Rptr.3d 427.
[33] Thompson, 113 Cal.App.4th at 1427, 7 Cal. Rptr.3d 427.
[34] Thompson, 113 Cal.App.4th at 1428, 7 Cal. Rptr.3d 427.
[35] Thompson, 113 Cal.App.4th at 1428, 7 Cal. Rptr.3d 427.
[36] Thompson, 113 Cal.App.4th at 1429, 7 Cal. Rptr.3d 427.
[37] Thompson, 113 Cal.App.4th at 1431, 7 Cal. Rptr.3d 427. See also Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 1522, 66 Cal.Rptr.2d 731 (1997).
[38] California Civil Code § 3426(d)(1), (2).
[39] Scott v. Snelling & Snelling, Inc., 732 F.Supp. 1034, 1043 (N.D.Cal.1990) (citing Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987)).
[40] We address the customer list because MP Medical only offers arguments and evidentiary submissions regarding the list. MP Medical merely claims that "customer information," which includes customer feedback about specific products, information about customer complaints and responses, and information about the ease of setup of products, is a trade secret. Similarly, MP Medical merely asserts that "business methods," such as its marketing methods, methods of doing business, and certain product information, are also trade secrets. As discussed in the analysis, "labeling" information as a trade secret is insufficient to establish the existence of a trade secret. The customer information and business methods therefore fail to qualify as trade secrets.
[41] Abba Rubber Co. v. Seaquist, 235 Cal.App.3d 1, 18, 286 Cal.Rptr. 518 (1991) ("A customer list is one of the types of information which can qualify as a trade secret.") (citing Am. Paper & Packaging Prods., Inc. v. Kirgan, 183 Cal.App.3d 1318, 1323-24, 228 Cal.Rptr. 713 (1986)).
[42] Snelling, 732 F.Supp. at 1044 (citing Am. Paper & Packaging, 183 Cal.App.3d at 1326, 228 Cal.Rptr. 713).
[43] Wegman produced a memorandum, dated June 21, 2007, showing that AACCW had relationships with 19 DME vendors; MP Medical and Halls were both listed.
[44] See Morlife, 56 Cal.App.4th at 1522, 66 Cal. Rptr.2d 731.
[45] The jury found that MP Medical had no trade secrets.
[46] 49 Cal.2d 690, 692-94, 321 P.2d 456 (1958).
[47] 155 Cal.App.4th 1528, 67 Cal.Rptr.3d 54 (2007).
[48] San Jose Constr., Inc., 155 Cal.App.4th at 1538, 67 Cal.Rptr.3d 54.
[49] Thompson, 113 Cal.App.4th at 1430, 7 Cal. Rptr.3d 427. The evidence submitted by MP Medical regarding confidentiality, however, does show that it took reasonable steps to maintain the customer list's secrecy, the second prong of the trade secret definition. See Morlife, 56 Cal. App.4th at 1522, 66 Cal.Rptr.2d 731; ReadyLink Healthcare v. Cotton, 126 Cal.App.4th 1006, 1018, 24 Cal.Rptr.3d 720 (2005).
[50] Health Insurance Portability and Accountability Act of 1996.
[51] This argument assumes that the customer list constitutes confidential information because MP Medical made it known to Wegman that it considered the list confidential by having him sign the employment agreement and confidentiality agreement.
[52] See Morlife, 56 Cal.App.4th at 1519, 66 Cal. Rptr.2d 731 (stating that "the former employee may not use confidential information or trade secrets" in competing with a former employer); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal.App.4th 853, 861, 27 Cal.Rptr.2d 573 (1994) ("[I]t seems that the employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract.") (internal quotes omitted).
[53] 174 Cal.App.3d 268, 219 Cal.Rptr. 836 (1985).
[54] Loral, 174 Cal.App.3d at 280, 219 Cal.Rptr. 836. The Loral court observed in a footnote that it did not reach the trade secrets question raised by the employer.
[55] Loral, 174 Cal.App.3d at 274, 219 Cal.Rptr. 836.
[56] Loral, 174 Cal.App.3d at 274, 219 Cal.Rptr. 836.
[57] Loral, 174 Cal.App.3d at 274, 219 Cal.Rptr. 836.
[58] MP Medical does not allege that Wegman breached his agreement not to solicit other employees, which falls under provision 7.2.
[59] HON. MING W. CHIN, HON. REBECCA A. WISEMAN, HON. CONSUELO MARIA CALLAHAN, & ALAN B. EXELROD, CALIFORNIA PRACTICE GUIDE: EMPLOYMENT LITIGATION, UNFAIR COMPETITION, § 14:455 (2008) ("It is not settled whether a former employee's use of a former employer's confidential information that is not protected as a trade secret constitutes unfair competition.").
[60] For these reasons, MP Medical's motion for summary judgment also fails.
[61] Reeves v. Hanlon, 33 Cal.4th 1140, 1148, 95 P.3d 513, 17 Cal.Rptr.3d 289, 294 (2004).
[62] See West Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wash.App. 466, 475, 694 P.2d 1101 (1985) (noting that the City's request for fees in its answer "was sufficient to notify the Fund that the City was seeking attorney's fees pursuant to its contract"). In its complaints, MP Medical requested fees under section 9.5 of the agreement, and Wegman requested fees in his answers.
[63] Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987).
[64] Mayer v. City of Seattle, 102 Wash.App. 66, 79-80, 10 P.3d 408 (2000).
[65] Hume v. Am. Disposal Co., 124 Wash.2d 656, 673, 880 P.2d 988 (1994).
[66] For the same reason, MP Medical's contention that the court should have segregated the fees between the two contract-related claims fails.
[67] Because substantial evidence supports the trial court's findings, MP Medical's challenges regarding the fee rates and the time spent are without merit.
[68] MP Medical contends that the court erred in entering judgment on the verdict for Wegman where the judgment refers to the untried, contract-related claims. This contention is not supported by adequate argument or decisional authority and is simply too conclusory to merit discussion. RAP 10.3(a)(5); State v. Elliott, 114 Wash.2d 6, 15, 785 P.2d 440 (1990) (appellate court need not consider claims that are insufficiently argued).